**Lillie RUSSELL, et al.,**
**Plaintiffs-Appellants,**

v.

**Dr. Robert HARRISON, President of the Board of Trustees of Institutions of Higher Learning, et al., Defendants-Appellees.**

**No. 83-4336.**

United States Court of Appeals,
Fifth Circuit.

July 16, 1984.

Willie J. Perkins, North Miss. Rural Legal Services, Greenwood, Miss., Alvin O. Chambliss, Oxford, Miss., for plaintiffs-appellants.

William A. Allain, Atty. Gen., Ed Davis Noble, Jr., Asst. Atty. Gen., Jackson, Miss., for defendants-appellees.

Before THORNBERRY, WILLIAMS and GARWOOD, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This is an appeal by plaintiffs from an adverse summary judgment in a civil rights action based on alleged violations of substantive and procedural due process. Seventeen former employees[1] of Mississippi Valley State University and Jackson State University brought this action against the Board of Trustees and other university and state officials,[2] alleging due process violations in connection with the premature termination of their one-year contracts of employment. Plaintiffs alleged that the dismissals were not administered pursuant to any uniform and justifiable plan and that the dismissals were processed without affording notice and a hearing. The district court concluded that plaintiffs had not presented a material question of fact as to violations of either substantive or procedural due process. Summary judgments for the defendants were granted on both charges.

We find that the district court's summary judgment on the claim of deprivation of substantive due process should be affirmed. The summary judgment on the claim of deprivation of procedural due process, however, we find to have been in error, because material fact questions were established and the issues should have been submitted to a jury.

Facts

At the October 22, 1982, meeting of the Mississippi Board of Trustees of Institutions of Higher Learning, it was determined that a state of financial emergency existed at Mississippi Valley State University (MVSU) and at Jackson State University (JSU).[3] Pursuant to this finding, the Board of Trustees directed the presidents of both universities to take whatever corrective measures they deemed appropriate in order to restore financial integrity to their respective institutions during the 1982–1983 fiscal year.

According to the district court's findings of fact, the presidents of MVSU and JSU analyzed the staffing patterns throughout their two universities and decided to meet the financial goal by reducing salaries and eliminating positions on the basis of the most efficient staffing per full-time student. The presidents reduced the salaries of several hundred employees and completely terminated contracts with eighty-eight other employees.

Plaintiffs fell in the latter category. Although they each had one-year written contracts guaranteeing employment until the summer of 1983, plaintiffs received notices in early November from the Office of the

1. Plaintiffs were employed in various capacities by the universities, including teaching as well as administrative positions. None of the teachers were tenured.

2. The groups and individuals specifically named as defendants were: the members of the Mississippi Board of Trustees of State Institutions of Higher Learning in both individual and official capacities; Dr. Joe L. Boyer, President of Mississippi Valley State University; Dr. John A. Peo-

ples, President of Jackson State University; William Winter, Governor of Mississippi; the Mississippi Department of Education; and Dr. Charles Holladay, State Superintendent of Education.

3. Jackson State University and Mississippi Valley State University are two of eight public universities in Mississippi.

President informing them that their contracts of employment were being terminated as of November 30, 1982.[4] The letters stated that the termination was necessitated by a state of financial emergency which existed at the universities. The notices did not inform the recipients of any right either to a hearing or an appeal, and none of the plaintiffs formally requested such procedures.

On December 1, 1982, plaintiffs filed a complaint in federal district court alleging violations of statutory and constitutional rights. They simultaneously filed a motion seeking a temporary restraining order and preliminary injunction ordering defendants to reinstate plaintiffs to their previous employment status.

After a hearing the next day, the district court denied plaintiffs' motion for preliminary injunctive relief. The court concluded that although plaintiffs possibly had a valid state claim grounded in breach of their employment contracts, plaintiffs had failed to demonstrate that they would suffer irreparable injury for which damages would not suffice. The court further found that plaintiffs had not pursued the administrative avenues of appeal provided by the universities. For these reasons, the court concluded that injunctive relief was inappropriate.

Plaintiffs immediately filed an amended complaint following the court's decision on December 2, 1982, and a second verified complaint on December 15, 1982. They based their claims for relief on 42 U.S.C. §§ 1981, 1982, 1983, and 1985; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; and the Fifth, Ninth, Fourteenth, and Fifteenth Amendments to the Constitution. Plaintiffs sought damages, as well as injunctive and declaratory relief. Defendants filed a motion for summary judgment on both substantive and procedural due process issues. Plaintiffs filed a cross motion for summary judgment solely on the procedural due process claim.

On April 29, 1983, the district court issued a memorandum order granting defendants' motion for summary judgment and denying plaintiffs' motion. *Russell v. Harrison*, 562 F.Supp. 467 (N.D.Miss.1983). The court recognized that plaintiffs enjoyed a constitutionally protected property interest in their employment and that this property interest could not be deprived without due process of law, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). On these facts, however, the court concluded that plaintiffs had been afforded adequate process. The court dismissed plaintiffs' complaint with prejudice as to the federal claims but without prejudice as to their right to pursue claims for breach of contract in state court. Plaintiffs appeal from the adverse summary judgment and dismissal of their complaint,[5] as well as from the denial of their motion for a temporary restraining order.

## I. Property Interest

We first address the issue of whether plaintiffs had a constitutionally protected interest in their employment since "[t]he requirements of ... due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth, supra*, 408 U.S. at 569 (1972), 92 S.Ct. 2701, 2705; *see also, Thompson v. Bass*, 616 F.2d 1259, 1264 (5th Cir.), *cert. denied sub nom., Thompson v. Turner*, 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980).

■ The district court correctly found that plaintiffs enjoyed a property right in their jobs. Each contract of employment covered a period of one year. Some of the contracts guaranteed one-year employment

---

4. The two plaintiffs employed by Jackson State University were notified that their contracts would be terminated on December 31, 1982.

5. The district court based its order solely on application of 42 U.S.C. § 1983, although plaintiffs claimed violations of several other statutes and constitutional amendments. Plaintiffs on appeal do not claim error in the district court's decision to disregard all other laws but § 1983, however, so the § 1983 claim is the only statutory claim before us on review.

without any stated conditions for removal. The remaining contracts provided that the employee could be dismissed, but only in limited situations.[6] The conditional contracts provided that the universities had "the power and authority to terminate this contract at any time for *malfeasance, inefficiency or contumacious conduct*" by the employee. It is clear that based on both the conditional and unconditional contracts, plaintiffs had more than "an abstract need or desire" for employment. On the contrary, the contracts gave plaintiffs "a legitimate claim of entitlement" to employment for the entire year unless sufficient cause was shown to justify their dismissal. *Board of Regents of State Colleges v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709; *see Bueno v. Donna,* 714 F.2d 484, 492 (5th Cir.1983).

By contractually consenting to one year terms of employment, the universities created constitutionally protected property interests in plaintiffs. Once created, these interests could not be destroyed by the universities without providing the procedural and substantive protections guaranteed by the Fourteenth Amendment. *See Bueno v. Donna, supra,* 714 F.2d at 492.

## II. Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if when viewing the evidence most favorably to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See, e.g. Transource International, Inc. v. Trinity Industries, Inc.,* 725 F.2d 274, 279 (5th Cir.1984).

■ While the court must draw all inferences in favor of the party opposing summary judgment, a plaintiff cannot establish a genuine issue of material fact by resting on the mere allegations of its pleadings. On the contrary, "once defendants have made ... sworn denials, summary judgment is appropriate unless plaintiff can produce *significant evidence* demonstrating the existence of a genuine fact issue." *Parsons v. Ford Motor Co.,* 669 F.2d 308, 313 (5th Cir.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982) (emphasis added).

■ In this case, the trial court rendered summary judgment for defendants on both substantive and procedural due process claims. On appeal, we are bound by the same standard that controls the district court. *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1030 (5th Cir. 1982).

## III. Substantive Due Process

In their complaint, plaintiffs alleged that their Fourteenth Amendment rights to due process were violated in connection with their dismissal because "[n]either Mississippi Valley State University nor Jackson State University were [sic] acting pursuant to any valid Reduction in Force Policy" when they terminated plaintiffs' contracts of employment; nor did the Board of Trustees have a "uniform Reduction in Force Policy ... applicable to the system as a whole." The district court first concluded that the defendants' actions could not be construed as a denial of substantive due process because plaintiffs did not contend that the elimination of their positions was arbitrary and capricious, or racially motivated.[7] In the alternative, the court stated

---

**6.** The non-teaching employees had unconditional contracts. The employees with teaching positions had contracts that provided for dismissal for cause.

**7.** The court's analysis was based solely on the pleadings and was cast in the form of a dismissal for failure to state a claim, pursuant to Fed.R. Civ.P. 12(b)(6). It is actually unclear, however,

whether the court intended to dismiss the complaint for failure to state a claim. The court did not specifically dismiss the complaint on this basis; no reference was made to Fed.R.Civ.P. 12(b)(6). At the same time, the court did note that it was unnecessary to focus attention on plaintiffs' substantive due process claim and devoted the rest of its order solely to plaintiffs' claims of procedural due process violations.

that "even if a denial of due process rights had occurred," defendants were entitled to a summary judgment on this issue because plaintiffs had not shown a genuine factual question as to whether their substantive due process rights had been infringed by the defendants' actions. For these reasons, the court declined to hear the merits of plaintiffs' claim of deprivation of substantive due process.

After reviewing the pleadings, we find that plaintiffs did adequately plead a substantive due process claim, and the district court erred in concluding in its first alternative ground that plaintiffs failed to do so. This finding does not control, however, as we agree with the district court's alternative conclusion that plaintiffs failed to meet their summary judgment burden.

A. Statement of Constitutional Claim

■ It is a well accepted principle that "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Here, the complaint alleged that after declaring a state of financial emergency, the Board of Trustees terminated the contracts of eighty-eight employees without regard to any uniform policy. It is true that the complaint does not specifically state that elimination of certain employees and not others without reference to a uniform policy evidences arbitrary and capricious decisionmaking in violation of the Fourteenth Amendment. Nor does the complaint specifically allege that the termination of some employees and not others without regard to any policy necessarily evidences racial motivation.

Despite plaintiffs' failure to elaborate, however, it is clear that they are claiming deprivation of substantive due process based on the fact that their contracts were terminated while the contracts of other employees were maintained, all in absence of any rational plan to explain this action. This is all that is required. Under the Federal Rules of Civil Procedure, "a complaint is not an anagramatic exercise in which the pleader must find just exactly the prescribed combination of words and phrases." *Thompson v. Allstate Insurance Company*, 476 F.2d 746, 749 (5th Cir.1973). Plaintiffs simply must give " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson, supra*, 355 U.S. at 47, 78 S.Ct. at 103. Since such notice was afforded, dismissal on this ground was improper.

B. Propriety of Summary Judgment

■ In support of their motion for summary judgment on the substantive due process claim, defendants submitted affidavits and testimony from the December 2, 1982, hearing on the temporary restraining order motion. This evidence indicated that a genuine financial emergency existed at the two universities, and that plaintiffs' contracts of employment had been terminated based on an analysis of the most efficient staffing per full-time student. The evidence established that the dismissals and salary reductions were based on uniform criteria bearing a reasonable relationship to the universities' financial problem. Viewed independently, this evidence showed that whether or not defendants' actions were wise,[8] at the least the actions were not arbitrary and capricious, or racially motivated.

Once defendants established initially that they were entitled to judgment on this issue as a matter of law, the burden shifted to the opponents, plaintiffs, to show that summary judgment was inappropriate. Plaintiffs were required to counter defendants' allegations with specific evidence showing the existence of a genuine factual

---

For this reason, though the court's intent is far from clear, we treat its first alternative ruling as a dismissal pursuant to Fed.R.Civ.P. 12(b)(6).

8. "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976).

dispute with regard to the constitutionality of their dismissal. *In Re Municipal Bond Reporting Antitrust Litigation,* 672 F.2d 436, 440 (5th Cir.1982). We agree with the district court that plaintiffs did not meet this burden.

Plaintiffs did not introduce affidavits or discovery material to counter defendants' prima facie proof that a bona fide financial emergency existed at MVSU and JSU. Neither did plaintiffs challenge the validity of the plan which defendants claimed they used.[9] Instead, plaintiffs merely rested on their original allegation that defendants did not use systematic criteria in making the termination decisions. This was an insufficient response to present a factual dispute. Accordingly, we affirm the summary judgment in favor of defendants on the issue of deprivation of substantive due process.

### IV. Procedural Due Process

■ This court has held that in employment termination cases, the minimum pre-termination procedural elements required by the due process clause of the Fourteenth Amendment include (1) written notice of the reasons for termination and (2) an effective opportunity to rebut those reasons. *Thurston v. Dekle,* 531 F.2d 1264, 1273 (5th Cir.1976), *vacated and remanded on other grounds,* 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978). Effective rebuttal means that the employee is given "the right to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decision." *Ibid.*

Summary judgment for the defendants on the procedural due process issue is thus inappropriate unless we can conclude from the summary judgment record that no factual dispute remains as to availability or adequacy of these procedures. *See Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). Relying on affidavits and testimony from the December 2, 1982, hearing for a temporary restraining order, the district court concluded that sufficient procedural safeguards had been afforded to plaintiffs in this case. First, the court found that plaintiffs had received timely notice of the termination decision in the form of individual letters from the presidents of their respective universities. The letters stated that the reason for termination was the financial emergency found to exist by the Board of Trustees. Second, although the notices did not inform plaintiffs specifically of their right to a hearing, the court found that in fact such a right did exist and that each of the plaintiffs had *actual* notice that this right existed.[10] Based upon its findings that notice was afforded and that a hearing procedure was available, the court found that no cause of action for deprivation of procedural due process under 42 U.S.C. § 1983 had been stated.[11]

Viewing all of the evidence and its reasonable inferences in a light most favorable to plaintiffs and resolving all reasonable doubts in the same manner, *Casey Enterprises, Inc. v. American Hardware Mutual Insurance Co.,* 655 F.2d 598, 602 (5th Cir.1981), we conclude that the summary judgment in favor of defendants on the

---

**9.** Testimony was introduced to establish that at the time plaintiffs were dismissed, employees with less seniority were retained. This alone, however, does not indicate that the plan allegedly employed by defendants was invalid. Under a "most efficient staffing per full-time student" analysis, it would not be unusual for some employees with higher seniority status to be dismissed. The mere fact that an employee has worked at a job for a long period of time does not mean that that employee is always the most efficient one to be retained on a staffing per full time student basis.

**10.** In making this conclusion, the court relied on testimony by plaintiffs at the TRO hearing

that they were generally aware that a right to a hearing existed in disciplinary discharges.

**11.** The court stated that "no cause of action was stated ... under 42 U.S.C. § 1983" and that "this action is not maintainable in federal court." The ruling however, was actually in the form of a summary judgment, and not a dismissal pursuant to Fed.R.Civ.P. 12(b), because the court considered evidence outside the pleadings in formulating its decision. *See Save Our Cemeteries, Inc. v. Archdiocese of New Orleans,* 568 F.2d 1074, 1077 (5th Cir.), *cert. denied,* 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 133 (1978).

procedural due process issue must be reversed. We concur in the district court's conclusion that the due process requirement of notice was satisfied. *See Thurston v. Dekle, supra,* 531 F.2d at 1273. The evidence clearly indicates that plaintiffs received notices explaining the reason for their termination. A genuine question of material fact remained, however, as to whether plaintiffs were given the opportunity to rebut the reasons given for their termination at a hearing or otherwise.[12]

The district court found that both universities had procedures for hearings. The court found that the procedures were outlined in the universities' personnel handbooks. In contrast to these findings of fact, however, plaintiffs introduced evidence indicating that the universities had no grievance procedures for the type of dismissal present in this case. Plaintiffs raised a material question as to whether the MVSU grievance procedures were intended for use in the case of terminations due to financial emergency.

As to the grievance procedures provided by MVSU, plaintiff Lillie Russell, for example, testified that although she was generally aware of a right to a hearing, she did not interpret the grievance procedures to apply to her case. Similarly, plaintiff Robert Hughes testified that he knew that the MVSU personnel handbook provided for hearings when an employee was terminated for cause, but was not aware of any right to a hearing for the type of termination in this case.

This testimony alone raises a factual issue as to the applicability of the MVSU grievance procedure hearings to termina-

tions due to financial emergency. Further, after reading the language of the *MVSU* handbook itself, we find no question but that a factual issue exists. The entire context of the section in the MVSU handbook on "Termination of Employment" focuses on employees terminated for cause. The section notes that "[a]n employee may be removed from a position at any time for cause"; "the policy of the university [is] to assist employees in improving job performance ... to avoid termination"; and "the supervisor will work with the employee in an attempt to improve his conduct or performance ..." The section then lists guidelines to be followed in working with employees. All of the guidelines deal with employee conduct. Even more significant, the sequence of corrective actions prescribed in the handbook relates only to problems with employee conduct, and the section on "Dismissal" deals only with dismissal for cause.

The MVSU handbook includes no references to terminations due to financial emergency. Plaintiffs expressed confusion as to whether the hearings applied on these facts and a review of the handbook itself reveals that the answer to this question is not without dispute. Despite this confusion,[13] the district court rendered a summary judgment for defendants. This ruling was inappropriate. "A court must not decide any factual issues it finds in the record, ... if such are present, the court must deny the motion and proceed to trial." *Impossible Electronics Techniques v. Wackenhut Protective Systems, supra,* 669 F.2d at 1031. A trial was necessary in this case to determine whether MVSU pro-

---

12. An employee would at the least be entitled to utilize the hearing as a means to complain that even under the plan used by defendants, he or she personally should not have been dismissed. For example, it might be argued that incorrect conclusions were drawn with respect to that particular employee under the universities' "most efficient staffing per full-time student" analysis. We need not determine the precise contours of what might be raised at such a hearing, for plaintiffs were afforded no opportunity for any hearing.

13. In an alteration of strategy, even defendants now contend that the grievance procedure outlined in the MVSU handbook may not apply to dismissal based on financial emergency. As a result, defendants argue that plaintiffs are not entitled to *any* procedural rights. Defendants made this argument in their supplemental reply brief and at oral argument. In their original brief, defendants argued that the MVSU grievance procedure did apply on these facts and that plaintiffs had not been denied procedural due process since they could have taken advantage of the procedures.

vided grievance procedures for employees dismissed for financial reasons.

Similarly, a trial was necessary to determine whether JSU provided adequate pre-termination process. The district court stated that the right to a hearing was available at JSU, but after reviewing the record, we find no indication that JSU provided hearings in the case of terminations for financial reasons or in any other case. The Jackson State University Faculty Handbook, which is part of the record, indicates that "[a]ll employees have the right to due process" and that "[t]he due process procedure is outlined in the University Personnel Handbooks." The JSU Personnel Handbook, however, is not part of the record and no summary judgment evidence was introduced by defendants to indicate that the process provided by JSU was in fact adequate. Though requested by sub-poena duces tecum, Dr. E.E. Thrash, Executive Secretary of the Board of Trustees, did not bring the JSU grievance procedure with him to his deposition. Further, in response to an inquiry by the court, Dr. Thrash stated that he did not know whether JSU provided for grievance procedures in its handbook. Since defendants did not present any evidence to prove that procedural due process was complied with at JSU, a summary judgment in their favor on this issue was improper.

We remand to the district court for trial of the issue of whether plaintiffs were provided a meaningful opportunity to respond to the reasons offered for their dismissal. If upon remand the district court finds that adequate process was not afforded, the court nevertheless need not order the universities now to provide hearings. The purpose of requiring hearings is to allow the employees an opportunity to rebut the reasons proffered for their dismissal, and to challenge the validity of these reasons. Such hearings would be pointless now since we here hold [14] that plaintiffs failed to raise any genuine substantive issue of wrongful discharge,[15] and since they had their opportunity for a hearing on the substantive issues in the district court.[16]

But even though hearings offered by the universities are not appropriate at this point, the denial of procedural due process is still actionable. "[T]he right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed..." *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978). Thus, if upon remand, the district court finds a denial of procedural due process, actual damages [17] may be awarded under 42 U.S.C. § 1983, *see Conley v. Board of Trustees of Grenada*

---

**14.** *See supra,* section III B.

**15.** If the substantive issue had not been resolved on the merits, the district court would be required either to hold a hearing or order a hearing. *See, e.g., Lucas v. Chapman,* 430 F.2d 945, 947 (5th Cir.1970), (when on appeal, this Court determined that substantive as well as procedural due process may have been violated, Court remanded to district court with instructions to remand to school board for hearing *nunc pro tunc*); *see also Prof. Ass'n of College Educators v. El Paso County Com. College,* 730 F.2d 258, 264–66 (5th Cir.1984).

**16.** Similarly, it is pointless now to rule on the propriety of the district court's December 2, 1982, denial of plaintiffs' motion for a temporary restraining order. Any error possibly committed by failing to restrain defendants temporarily from firing plaintiffs prior to a hearing is

harmless since plaintiffs failed to show that their substantive due process rights had been violated.

**17.** Damages are not presumed to result from deprivation of procedural due process; plaintiffs must prove actual injury in order to recover anything beyond nominal damages. *See Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978). Where no substantive violation of rights can be shown, it is difficult to envision what actual damages plaintiff might prove. Courts have expressed skepticism as to whether actual damages resulting solely from the deprivation of procedural due process ever can be proved, *see Wilson v. Taylor,* 658 F.2d 1021, 1032 (5th Cir.1981), but have nevertheless afforded plaintiffs the opportunity to prove such damages. *See, e.g., Laje v. R.E. Thomason General Hospital,* 665 F.2d 724, 728 (5th Cir.1982).

*County Hospital,* 707 F.2d 175, 182 (5th Cir.1983), and nominal damages are appropriate in the event that no actual damages are shown. *See Carey v. Piphus, supra,* 435 U.S. at 266, 98 S.Ct. at 1053.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.