Landus ROSS and Eddie
Imperial, Plaintiffs,

v.

Marvin RUNYON, et al., Defendants.

Civ. A. No. H–93–1933.

United States District Court,
S.D. Texas,
Houston Division.

July 6, 1994.

Cynthia Jean–Marie Cline, Houston, TX, for plaintiffs.

Larry C. Marcy, U.S. Attys. Office, Mary Ann Starks, Marvin B. Peterson, Houston, TX, Susan L. Catler, O'Donnell Schwartz & Anderson, Washington, DC, for defendants.

### MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is the Motion to Dismiss or in the Alternative for Summary Judgment (Docket Entry # 7 in No. H–93–4117 prior to consolidation with No. H–93–1933) filed by defendants the American Postal Workers Union, AFL–CIO ("the APWU"), the Houston, Texas Area Local of the APWU ("the Local"), and Terry Stapleton ("Stapleton") (collectively "the union defendants"). The APWU seeks dismissal based on improper service of process. All of the union defendants seek dismissal for failure to state a claim, or in the alternative summary judgment, on allegations that they breached their duty of fair representation. The union defendants also seek dismissal, or in the alternative summary judgment, based on federal preemption of the plaintiffs' state law claims. On the pending motion, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that the defendants' motion should be granted.

### I. Background.

Plaintiffs Landus Ross ("Ross") and Eddie Imperial ("Imperial"), employees of the United States Postal Service ("the Postal Service"), are suing the Postal Service and the Postal Workers Union, both the national and the Local, as well as Stapleton, the President of the Local. They allege that the union defendants breached their duty of fair representation and that the Postal Service breached the collective bargaining agreement between the APWU and the Postal Service. In

addition, Ross and Imperial assert employment discrimination and several state law claims against various of the defendants.

## II. *Analysis.*

### A. *Service Upon the APWU.*

■ Defendant the APWU asserts that Ross and Imperial's complaint should be dismissed due to insufficient service of process under Fed.R.Civ.P. 12(b)(5). By statute, service on a postal union must be made on an officer or agent of the labor organization, in his capacity as such. 39 U.S.C. § 1208(e).

In the instant case, plaintiffs attempted to serve all the union defendants by personally serving Stapleton. The affidavit of plaintiffs' process server states that to effectuate service, he went to the union hall and asked to see Stapleton. Dessie Brown ("Brown"), Stapleton's secretary, told him that Stapleton was in a union meeting and was unavailable. Brown said that she could accept the documents and forward them to Stapleton. Accordingly, the process server left the documents, including the summons and the complaint, with Brown. The APWU contends that because neither Stapleton nor Brown was an officer of the APWU, nor were they authorized to accept service of process on its behalf, the organization was not properly served.

■ A determination of the sufficiency of service turns upon the specific facts of the case. For example, service on a secretary of an officer of a union was held to be insufficient when the secretary told the process server that she was not authorized to receive service on behalf of the union. *Wham v. National Post Office Mailhandlers Div. of the Laborers' Int'l Union,* 99 L.R.R.M. 2980, 2981 (D.S.C.1978). By contrast, sufficient service of process was found when a secretary reviewed the documents and erroneously told the process server that she was authorized to accept them. *Clipper v. Frank,* 704 F.Supp. 285, 287 (D.D.C.1989). In *Clipper,* the individual for whom the secretary accepted the documents was authorized to accept service on behalf of the union and ultimately received the summons and complaint.

A review of the facts in this case reveals that the APWU was never properly served. Here, the process server's affidavit states merely that Brown said that she could *accept the documents* and forward them to Stapleton. The process server does not state that he informed Brown of the contents of the documents, that she reviewed them, or that she told him that she was *authorized to accept service on behalf of the union.* Most significantly, Stapleton, the intended recipient, was not authorized to accept service of process on behalf of the APWU because he was neither an officer nor an agent of the APWU. Therefore, Stapleton's eventual receipt of the summons and complaint was of no legal effect.

■ Plaintiffs' argument that the Local is an agent of the national APWU for the purpose of accepting service is without merit. The Houston local, like all locals of the APWU, is fully autonomous. It is separate and distinct from the APWU, with which it is affiliated, and has its own constitution, by-laws and officers. It has long been recognized that service of process on an autonomous local union is not sufficient to acquire personal jurisdiction over the national union with which it is affiliated. *Gray v. International Ass'n of Heat & Frost Insulators,* 416 F.2d 313, 316 (6th Cir.1969); *Mathis v. Boeing Co.,* 117 F.R.D. 167, 169 (W.D.Wash. 1987); *Bacino v. American Fed'n of Musicians,* 407 F.Supp. 548, 552–54 (N.D.Ill.1976). Thus, it appears that service meeting the statutory requirements was never effectuated on the APWU.

■ Ross and Imperial argue that even if service of process were found to be insufficient, the APWU received actual notice of the suit. Actual notice, however, is not determinative. While a defendant may have full knowledge that an action has been commenced against it, a court lacks jurisdiction to enter a judgment against the defendant unless personal jurisdiction has been obtained by strict compliance with the statute designating the method of obtaining such jurisdiction. *Frasca v. Eubank,* 24 F.R.D. 268, 270 (E.D.Pa.1959); *see also Tart v. Hudgins,* 58 F.R.D. 116, 117 (M.D.N.C.1972); *Rixner v. White,* 417 F.Supp. 995, 997

(D.N.D.1976). Here, strict compliance with the statute governing service of process on postal unions is lacking.

Moreover, under Fed.R.Civ.P. 4(m) service must be made upon a defendant within 120 days of the filing of the complaint. Otherwise, absent a showing of "good cause" for the delay, the action must be dismissed as to that defendant. More than 120 days have elapsed since plaintiffs filed their amended complaint on December 23, 1993. Instead of remedying any prior defects in service and properly serving the APWU with the amended complaint within the statutory period, plaintiffs continue to rely upon their prior effort at service. Consequently, because plaintiffs failed to comply with the statutory requirements for service on the APWU and have not attempted to show "good cause" for the delay, plaintiffs' claims against the APWU are dismissed for insufficiency of service of process.

### B. *Duty of Fair Representation.*

The relationship between the Postal Service and its employees' bargaining representatives is governed by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, which is made applicable to suits involving the Postal Service by the Postal Reorganization Act, 39 U.S.C. §§ 1209(a), (b). Under § 2 of the Postal Reorganization Act, federal courts have jurisdiction of disputes arising under collective bargaining agreements executed by the Postal Service. 39 U.S.C. § 1208(b). That section is the "analogue" of § 301(a) of the LMRA, 29 U.S.C. § 185(a). *National Ass'n of Letter Carriers v. United States Postal Service,* 590 F.2d 1171, 1174 (D.C.Cir.1978). Thus, the decisions under § 301 addressing an employee's right to challenge an adverse employment decision are fully applicable here. *See Lawson v. Truck Drivers, Chauffeurs & Helpers,* 698 F.2d 250, 255–56 (6th Cir.), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983).

Under § 301, when a collective bargaining agreement establishes a mandatory, binding grievance procedure and gives the union the exclusive right to pursue claims on behalf of aggrieved employees, the results obtained by the union are normally conclusive of the employees' rights under the agreement. *See, e.g., Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 568, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes,* 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). These rules are not, however, without exception. If a union breaches its duty of fair representation, an aggrieved employee is not foreclosed by the results of the grievance process and may look to the courts for a remedy.

A union breaches its statutory duty of fair representation "only when a union's conduct towards a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. at 190–91, 87 S.Ct. at 916–17. Any substantive examination of a union's performance by a court must be highly deferential, recognizing the wide latitude the negotiators need for the effective performance of their bargaining responsibilities. *Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 78, 111 S.Ct. 1127, 1135–36, 113 L.Ed.2d 51 (1991). The final product of the bargaining process may constitute evidence of a breach of duty only if it can be fairly characterized as being so far outside a "wide range of reasonableness" that it is wholly "irrational" or "arbitrary." *Id.* Mere negligence, poor judgment, or ineptitude are insufficient. *Ford Motor Co. v. Huffman,* 345 U.S. 330, 388, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953).

To comply with its duty of fair representation, a union must conduct some minimal investigation of grievances brought to its attention. *NLRB v. American Postal Workers Union,* 618 F.2d 1249, 1255 (8th Cir.1980); *De Arroyo v. Sindicato de Trabajadores Packinghouse,* 425 F.2d 281, 284–85 (1st Cir.), *cert. denied,* 400 U.S. 877, 91 S.Ct. 117, 121, 27 L.Ed.2d 114, 115 (1970). The thoroughness with which unions must investigate grievances in order to satisfy their duty varies with the circumstances of each case. *Tenorio v. NLRB,* 680 F.2d 598, 601 (9th Cir.1982). As long as a union exercises its discretion in good faith and with honesty of purpose, a wide range of reasonableness must be allowed. *Hines v. Anchor Motor*

*Freight,* 424 U.S. at 563–64, 96 S.Ct. at 1055–56; *NLRB v. American Postal Workers Union,* 618 F.2d at 1255. Accordingly, a union is protected from liability even if it acts on a mistaken belief that a grievance lacks sufficient merit to justify further appeal or arbitration, so long as it acts in good faith. *Vaca v. Sipes,* 386 U.S. at 190, 87 S.Ct. at 916–17.

### 1. *Ross' Claim.*

 Ross' claim arises from the Postal Service's efforts to discharge him in June 1993 for allegedly making threatening remarks to his supervisor. Ross contends that the Local's investigation of his grievance concerning his proposed removal from the Postal Service was so grossly inadequate as to transcend negligence and poor judgment. He argues that, by making no effort to hear his explanation of the events that resulted in his Notice of Removal, the Local showed a reckless disregard for his rights and, thus, breached its duty of fair representation. Ross also contends that there was a "conflict of interest" between him and the union defendants, stemming both from an unfair labor practice charge he filed against the Local and a purported undercover drug buy that Ross made from Mark Neveu ("Neveu"), the union steward, while Ross was working for the United States Postal Inspection Service ("the Inspection Service").[1]

On May 6, 1992, approximately one year prior to the events giving rise to this lawsuit, Ross reported to the Inspection Service that he had made a drug buy from Neveu. The alleged buy, however, was not tape recorded or documented in any manner. Because Ross' claim was not supported by any evidence other than his statement, the Inspection Service did not acknowledge the validity of the supposed buy and took no action against Neveu. Moreover, even if the buy had occurred, there is no evidence that Neveu and Ross were at odds over the transaction. Instead, it appears that because the Inspection Service never followed up on it, Neveu would have had no reason to regard Ross as anything but a satisfied customer. Neveu's diligent efforts on Ross' behalf during the grievance process also belie the legitimacy of the "conflict of interest" theory.

Ross argues that the Local was on notice of the Ross/Neveu conflict because his attorney forwarded a Tort Notice Letter to the Postal Service on June 13, 1993, which included information about Ross' alleged drug buy from Neveu. The unrefuted evidence shows, however, that the Local was not provided with a copy of the letter and had no independent notice of such allegations against Neveu. Indeed, in a letter dated June 29, 1993, from Ross' counsel to the Local and its counsel, there is no mention of Neveu's alleged drug dealing or of a conflict of interest between Ross and Neveu. While the perceived conflict was discussed at the Texas Employment Commission hearing on September 30, 1993, no representative of the Local attended and the union defendants did not receive a copy of the transcript. In addition, any ostensible conflict had no effect on the processing of Ross' grievance. Neveu was merely the steward assigned to the case. Throughout the grievance process, as established by his unrebutted affidavit, Dan Simmons, the Maintenance Craft Director, personally oversaw the handling of Ross' grievance. The unfair labor practice charge, likewise, had no bearing on the processing of Ross' grievance, as it was withdrawn in July 1993, well before the grievance procedure concluded. Thus, Ross' conflict of interest argument is without support in the record.

 The court, likewise, finds no support in the record for Ross' assessment of the union's performance. The facts indicate that the union defendants handled Ross' grievance in a reasonable, rational, and nonarbitrary manner. The Postal Service sought to discharge Ross because of threatening remarks he allegedly made to his supervisor, Superintendent Carney ("Carney"), on May

---

**1.** From March 1992 until August 14, 1992, Ross worked as a confidential informant for the Inspection Service. During his brief stint as a confidential informant in Houston, Ross' success was limited. According to the Inspection Service's records, he executed only two of four proposed drug purchases, and those purchases were "questionable." Ross' superiors at the Inspection Service became dissatisfied with Ross' performance and terminated him as a confidential informant after he tested positive for cannabis in a drug test.

28 and June 13, 1993, in connection with a request for leave time. On June 23, 1993, a pre-discipline meeting was held at which Ross was given an Emergency Suspension for "making threats of violence to Postal employees." On June 30, 1993, Ross was issued a Notice of Removal to be effective August 6, 1993, for "Improper Conduct, Making Threatening Remarks," based on alleged comments that certain employees "will all end up dead" and that Ross had a "nine shot" (9 mm firearm). Without Ross requesting him to do so, Neveu immediately filed a grievance on Ross' behalf protesting the impending discharge.

On July 1, 1993, at Step 1 of the grievance procedure, Ross, Carney, Neveu, and Al Vela ("Vela"), Ross' supervisor, met to discuss Ross' grievance. At the meeting, Ross contended that he did not make any verbal threats and that the Postal Service management had misconstrued his comments. The grievance was not resolved, and Neveu appealed on Ross' behalf to Step 2. A Step 2 meeting was held on September 9, 1993, between Neveu and Callie McGilbert ("McGilbert"), Manager, Distribution Operations, Houston District. At that meeting, Neveu stressed that he believed that Ross had been misquoted. He argued that rather than personally threatening to take action, Ross was simply making a statement of fact that he felt management's behavior, if unchanged, might provoke some employees, not himself, to take action detrimental to management. McGilbert conferred with the Plant Manager, John Davis, and offered to resolve the grievance by reducing the discharge to a thirty-day suspension, with Ross receiving back pay for all the time he had been off work in excess of thirty days. Neveu accepted the offer.

■ The declaration submitted by Neveu detailing the chain of events, which is uncontradicted, demonstrates that Neveu adequately investigated the charges. Ross' contention that Neveu made no attempt to hear Ross' explanation of the comments is contradicted by the record. Ross explained his side of the story at the Step 1 meeting on July 1, 1993, which Neveu attended. Based upon this information, Neveu was ultimately successful in persuading the Postal Service to reduce the discharge to a thirty-day suspension, with Ross receiving backpay for all time he had been off in excess of thirty days. Neveu, according to his declaration, accepted this offer on Ross' behalf because he felt that "we were likely to lose totally if we went to arbitration and because I thought the settlement offered ... was better than we were likely to receive if we arbitrated and partially won." Neveu went on to say that he felt that getting Ross his job back was very important and possibly risking it to get additional back pay was not wise. Neveu explained that this was the prudent course to follow in light of recent shootings on Postal Service property in Oklahoma, Detroit, California, and other sites, as well as the stabbing of a supervisor in the Houston Post Office. Neveu was of the opinion that the Postal Service would be able to convince an arbitrator that employees who made threats involving guns should be dealt with severely. Thus, Neveu simply exercised his judgment in determining to accept the settlement. Such a decision is part of the normal exercise of discretion by a union representative and does not constitute a breach of the union's duty of fair representation. *See Air Line Pilots Ass'n v. O'Neill,* 499 U.S. at 78, 111 S.Ct. at 1135–36; *Vaca v. Sipes,* 386 U.S. at 190, 87 S.Ct. at 916–17.

Indeed, in his response, Ross presents no summary judgment evidence suggesting that the Local handled Ross' grievance in a manner so far outside a "wide range of reasonableness" that it was wholly "irrational" or "arbitrary." To the contrary, it appears that the union defendants more than adequately represented Ross in securing his reinstatement. Ross and his attorney, however, failed to respond. The Postal Service agreed to reinstate Ross with back pay from July 31, 1993, through September 10, 1993, and a return-to-work date of September 11, 1993. Although not required to do so, Neveu repeatedly attempted to notify Ross' attorney of his reinstatement on September 9 and 10, 1993, but was unsuccessful. Ross' counsel previously had instructed Neveu not to contact Ross directly.

■ After Neveu's attempts to reach Ross' attorney proved unavailing, he then

called the offices of the attorneys for the Local. Members of the attorneys' staff again attempted to reach Ross' attorney by telephone, fax, mail, and courier service, all to no avail. In view of the difficulties encountered in communicating the offer of reinstatement to Ross, representatives of the union persuaded the Postal Service to extend the return-to-work date to September 17, 1993, to allow additional time to notify him. When Ross' counsel finally responded to the Local's attorney, she stated that Ross wished to pursue matters through the Merit System Protection Board and "any actions by the union on his behalf are against his wishes and he will take legal remedies for such actions if they exist."[2] Thus, Ross cannot complain about the quality of the union's representation, which had resulted in an offer of reinstatement with substantial back pay, when Ross, through his attorney, had expressly rebuffed and disavowed the union's efforts on his behalf. Under these circumstances, the union defendants cannot be said to have behaved in an irrational or arbitrary manner or failed properly to represent Ross.

■ Ross offers no proper summary judgment evidence to refute the facts set forth in the union defendants' declarations. Instead, Ross attempts to defeat summary judgment by submitting a hodge-podge of hearsay, illegible notes, and indecipherable tape recordings. Ross also submits an affidavit and records detailing the Texas Employment Commission's determination of his claim for unemployment benefits. The Texas Employment Commission determined that the Postal Service failed to establish that Ross was discharged for "misconduct," as that term is used in the Texas Unemployment Compensation Act, and awarded unemployment benefits to Ross. The Appeals Tribunal defined "misconduct" in accordance with TEX.LAB.CODE ANN. § 201.012 and found that Ross was discharged for reasons other than misconduct. This determination is not dispositive of the issue of whether the Postal Service had "just cause" to discharge or discipline Ross under Article 16 of the collective bargaining agreement, the standard to which

the union defendants and the Postal Service are bound. Moreover, Ross' attempt to rely on this determination directly contravenes TEX.LAB.CODE ANN. § 213.007, which provides:

> A finding of fact, conclusion of law, judgment, or final order regarding a claim for benefits under this subtitle is not binding and *may not be used as evidence* in an action or proceeding, other than an action or proceeding brought under this subtitle, even if the action or proceeding is between the same or related parties or involves the same facts. (Emphasis added.)

Hence, Ross has failed to establish a genuine issue of material fact with respect to the union defendants' duty of fair representation. While the law is clear that a court must draw all reasonable inferences in favor of the party opposing the motion for summary judgment, an opposing party cannot establish a genuine issue of material fact merely by resting on conclusory allegations, which, after disregarding the unemployment benefits determination, are all that remain here. *Russell v. Harrison*, 736 F.2d 283, 287 (5th Cir.1984). The opposing party must produce sufficient evidence to demonstrate that a genuine factual issue exists; if he fails to do so, a properly supported motion will be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). In this instance, because Ross has not established the existence of a genuine issue of material fact, the union defendants are entitled to summary judgment on Ross' breach of the duty of fair representation claim.

### 2. *Imperial's Claim.*

■ In 1993, the Local processed two grievances in response to Notices of Proposed Removal issued to Imperial, and in 1991 and 1992, it processed four contract interpretation grievances on behalf of Imperial. Imperial, in his response to the union

---

**2.** When Ross did not report to work in accordance with the offer of reinstatement, the Postal Service again sought to terminate Ross. The

Local is currently processing a removal grievance with regard to this matter, again without Ross' cooperation.

defendants' motion, asserts that the only grievance he is complaining of is "the one of September 1993."[3] A review of the records submitted reveals that there are no genuine issues of material fact giving rise to a claim for breach of the duty of fair representation with respect to that grievance.

On September 1, 1993, the Postal Service issued a Notice of Removal to Imperial for alleged insubordination on the grounds that he persisted in bringing a tape recorder to work, despite being ordered by his supervisor not to do so. The Local responded by filing a grievance arguing that the Labor Relations Manual did not prohibit employees from carrying tape recorders at the work site and contending that the supervisor's order was beyond the scope of his authority. No factual investigation of this grievance was required because the issue was whether management had misapplied work rules, a matter of language interpretation and past practice. On October 22, 1993, the grievance was resolved at Step 2, when the Postal Service agreed to rescind Imperial's discharge, as the Postal Service was unable to support its argument that the Labor Relations Manual prohibits employees from carrying tape recorders at the work site. At present, Imperial is still employed by the Postal Service and is permitted to bring his tape recorder to work without restriction.

Imperial has submitted no proper summary judgment evidence to refute these facts. Indeed, Imperial's only evidence consists of affidavits claiming that he was not contacted by the union defendants in the processing of his "tape recorder" grievance and was unaware that a grievance has been filed, as well as some largely indecipherable documents apparently pertaining to the "docked pay" and/or "medical leave" grievances that are not ripe for judicial determination. Such evidence is insufficient to defeat the union defendants' motion for summary judgment. Because the Postal Service rescinded Imperial's discharge as a result of

the union's processing of his grievance, there can be no basis for finding a breach of the duty of fair representation. *Air Line Pilots Ass'n v. O'Neill,* 499 U.S. at 78, 111 S.Ct. at 1135–36. Therefore, the union defendants are entitled to summary judgment on Imperial's breach of the duty of fair representation claim.

### C. State Law Claims are Preempted by Federal Law.

■ Ross asserts what he characterizes as "pendent Texas common law tort claims." He alleges that the union defendants were negligent in their failure to train and supervise representatives, agents, officers, employees, and supervisors with respect to various acts of harassment and intentional and negligent infliction of emotional distress committed against him. Additionally, both Ross and Imperial assert that the defendants acted in bad faith and bring a claim for "Breach of Duty of Good Faith." These claims fail, however, because they are preempted by federal labor law and there is no independent basis for federal jurisdiction.

■ A state law claim is preempted if it is "inextricably intertwined with the terms of ... [a] labor contract." *Lingle v. Norge Division,* 486 U.S. 399, 406, 413, 108 S.Ct. 1877, 1881, 1885, 100 L.Ed.2d 410 (1988); *Allis–Chalmers v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). Here, Ross and Imperial's purported state law claims are so intertwined. The essence of Ross' and Imperial's claims is that the union and its representatives should not have handled their grievances as they did. Without referring to the 1990 National Agreement, reviewing the contractually established grievance procedure, and interpreting its terms, it would be impossible to determine whether the union defendants acted improperly in processing their grievances. Thus, plaintiffs' state law breach of duty of good faith claims, which appear merely to dupli-

---

**3.** In later filings, Imperial also complains about "docked pay," which is the subject of a pending grievance, and alludes to a dispute regarding "medical leave," which either is subsumed with the "docked pay" grievance or has never been brought to the attention of the Local. Because Imperial has not exhausted the contractual grievance procedure with respect to these claims, Imperial's additional grievances are not properly before the court. *See Republic Steel Corp. v. Maddox,* 379 U.S. 650, 653, 85 S.Ct. 614, 616–17, 13 L.Ed.2d 580 (1965).

cate their duty of fair representation claims under § 301, are preempted by federal labor law. *Lingle v. Norge Division,* 486 U.S. at 406, 413, 108 S.Ct. at 1881; *Allis–Chalmers v. Lueck,* 471 U.S. at 213, 105 S.Ct. at 1912. The negligence and emotional distress claims also are intertwined with the application of the substantive provisions and grievance procedures contained in the collective bargaining agreement and, likewise, are preempted. *See Burgos v. Southwestern Bell Tel. Co.,* 20 F.3d 633, 636 (5th Cir.1994); *Brown v. Southwestern Bell Tel. Co.,* 901 F.2d 1250, 1255–56 (5th Cir.1990); *Wells v. General Motors Corp.,* 881 F.2d 166, 172 (5th Cir.1989), *cert. denied,* 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990). Therefore, because all of the plaintiffs' state law claims implicate the collective bargaining agreement and the union's proper role under the agreement, Ross and Imperial's state common law claims are preempted by federal labor law and must be dismissed.[4]

### III. *Conclusion.*

Because Ross and Imperial failed properly to serve the APWU, their claims against the APWU are dismissed. Ross and Imperial's breach of the duty of fair representation claims are dismissed as to all of the union defendants, as they have failed to raise genuine issues of material fact to defeat the union defendants' motion for summary judgment. Ross and Imperial's state law claims against all of the union defendants are dismissed because they are preempted by federal labor law and are lacking an independent basis for federal subject matter jurisdiction. Moreover, upon dismissal of the federal claims, there is no reason for this court to exercise supplemental jurisdiction over the state claims.

Accordingly, the union defendants' Motion to Dismiss or in the Alternative for Summary Judgment is GRANTED. The claims asserted by Ross and Imperial against the APWU, the Local, and Stapleton are DISMISSED

ON THE MERITS. The APWU, the Local, and Stapleton likewise are DISMISSED as defendants to this action.

IT IS SO ORDERED.

---

4. If the state law claims were not preempted, the court would nevertheless decline to exercise jurisdiction to consider them. Once the federal claims have been dismissed, the court has discretion to decline to exercise supplemental jurisdiction over any pendent state law claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 590 (5th Cir.1992).