**Wayne and Janice MIKESKA, and Mose and Carol Smith, Plaintiffs,**

v.

**THE CITY OF GALVESTON, Defendant.**

No. CIV.A. G–02–045.

United States District Court, S.D. Texas, Galveston Division.

Aug. 2, 2004.

---

Robert M Moore, Galveston, TX, for Wayne Mikeska, Janice Mikeska, Mose Smith, Carol Smith, plaintiffs.

George William Vie, III, Mills Shirley LLP, Galveston, TX, for the City of Galveston, defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

This lawsuit arises out of the alleged unlawful taking by the City of Galveston, Texas ("the City"), of property owned by Plaintiffs Wayne and Janice Mikeska ("the Mikeskas") and Mose and Carol Smith ("the Smiths") (collectively "Plaintiffs"). Now before the Court comes the City's Motion for Summary Judgment. For the reasons stated below, the Motion is hereby **GRANTED**.

I. Background and Facts

■ Texas divides the land along the Texas Gulf Coast into three zones: submerged land, "wet beach," and "dry merged land, "wet beach," and "dry beach." The submerged land belongs to the State of Texas. *See, e.g., City of Port Isabel v. Mo. Pac. R.R. Co.*, 729 S.W.2d 939, 943 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). Texas also owns the wet beach, which lies between the line of mean low tide and the line of mean high tide. *See Hirtz v. State of Texas*, 974 F.2d 663, 664 (5th Cir.1992). The dry beach, commonly referred to as the "public beach," lies between the line of mean high tide and the line of vegetation. Generally, the dry beach is privately owned.

■ The private ownership of the dry beach does not prevent public access for recreation and enjoyment. *See id.* A public easement, derived from common-law principles of dedication, prescription, and custom, lies over the majority of the dry beach along the Texas coast. *See Matcha v. Mattox*, 711 S.W.2d 95, 100 (Tex.Civ. App.—Austin 1986, writ ref'd n.r.e.); *Seaway Co. v. Attorney General*, 375 S.W.2d 923, 940 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.). The Texas Open Beaches Act, Tex. Nat Res.Code Ann. § 61.011, codifies the easement and provides for unrestricted public access to the state-owned wet beach and submerged land. *See id.* § 61,011(a). The Act provides in particular:

It is declared and affirmed to be the public policy of this state that the public, individually and collectively, shall have the free and unrestricted right of ingress and egress to and from the state-owned beaches bordering on the seaward shore of the Gulf of Mexico, or if the public has acquired a right of use or easement to or over an area by prescription, dedication, or has retained a right by virtue of continuous right in the public, the public shall have the free and unrestricted right of ingress and egress to the larger area extending from the line of mean low tide to the line of

vegetation bordering on the Gulf of Mexico.

*Id.* The Act allows the public to "enforce such collective rights as they may have legally acquired by reason of dedication, prescription, or which they may have retained by continuous right" without taking rights away from owners of the dry beach. *Seaway,* 375 S.W.2d at 930.

The public's dry beach easement is peculiar in nature because its location shifts over time. The fluidity of the easement's boundaries results from the changing nature of the vegetation line and the water's edge. As these changes occur, the position of the public easement necessarily shifts. Were this not the case, the easement would rapidly disappear underwater or become detached from the shore by permanent vegetation.

Occasionally, the easement's boundaries change drastically in a short period of time as a result of storms or other natural events. Such events may shift the easement's boundaries so dramatically that buildings once landward of the easement will fall completely within its boundaries. Owners of beachfront property are therefore burdened with the harsh reality that as the beach erodes and accretes over time, more and more of their land may become subject to the public easement. Indeed, the dry beach easement along the Texas Gulf Coast has widened and narrowed continuously over the years due to fluctuations of the winds, currents, tides, and storms. Over the past several decades in particular, the beach corridors in Galveston have migrated landward as the vegetation line and the shoreline have been lost to the sea.

Plaintiffs are the owners of beachfront property in Galveston's Bermuda Beach subdivision. The Mikeskas own 12817 Bermuda Beach Drive, a beachfront home located at Lot 6, Bermuda Beach, Section 2, in Galveston, Texas. The Smiths own 12829 Bermuda Beach Drive, a beachfront home located at Lot 3, Bermuda Beach, Section 2, in Galveston, Texas. Plaintiffs have fallen victim to the phenomenon of the shifting beach easement, particularly following Tropical Storm Frances in 1998. Because its wind velocity was relatively low for a tropical storm, Frances did not cause the typical amount of damage to beachfront homes. Frances drastically shifted the vegetation line and caused significant erosion of sand, however, leaving Plaintiffs and other beachfront owners without public utility services and leaving their private, on-site septic systems exposed and inoperative. The sand erosion also left the concrete slabs under Plaintiffs' homes suspended, and Plaintiffs were eventually required to remove the slabs. Most significantly, Frances left Plaintiffs' homes completely seaward of the vegetation line and therefore within the public's dry beach easement.

On May 13, 1999, the Texas General Land Office ("the GLO") published a list of 107 homes situated on the Gulf coast that it determined to be 100% seaward of the natural vegetation line following Tropical Storm Frances ("the GLO 100% List"). After publication of the list, the GLO referred these 107 homes to the Texas Attorney General, requesting that the Attorney General take appropriate action to remove all 107 homes for violation of the Texas Open Beaches Act. *See* Tex. Nat. Res.Code Ann. § 61.001 et seq. (Vernon 2001 & Supp.2004). The City condemned Plaintiffs' septic systems, disconnected their utility services, and required them to remove the suspended concrete slabs from under their homes, allegedly because Plaintiffs' homes appeared on the 100% List. When the City installed a new public sewer line in Bermuda Beach along the street fronting Plaintiffs' home sites, the City refused to hook Plaintiffs' homes up to the system, again justifying its action

with reference to the GLO 100% List. During the installation of the sewer line, City employees entered Plaintiffs' lots and dug holes (or "sumps") that blocked access to Plaintiffs' homes. Sand upturned during the sewer excavation was piled on the beachfront adjacent to Plaintiffs' tracts and bulldozed into a barricade abutting Plaintiffs' entryways, rendering their homes at least partially inaccessible. Plaintiffs allege that the City's construction activities, particularly bulldozing and the resulting barricade, artificially prevented the resurgence of the natural vegetation line under their homes.

Although Plaintiffs' homes were placed on the GLO 100% List, neither the State nor the City suggested that total condemnation would be necessary. In a letter dated August 11, 1999, the Texas Attorney General assured Plaintiffs that the State of Texas would not take any action to remove their homes. *See* Letter from John Cornyn, Texas Attorney General, to Wayne and Mar-kay Mikeska (August 11, 1999), Plaintiffs' Response Exh. 13. According to the letter, the State had decided that removal was unnecessary because there was no clear evidence that Plaintiffs' homes significantly interfered with beach access or presented an imminent threat to public health. The letter instructed that "[p]roposals involving repairs or construction to your house must be submitted to your local government for review to determine whether your application is consistent with its dune protection and beach access plan, and a permit or certificate will be issued. Questions about the interpretation or applicability of the GLO's Beach/Dune Rules and underlying statutory authority should be directed to the GLO." *Id.*

Between the time their utilities were disconnected or condemned and the time they filed this lawsuit, Plaintiffs continually sought the City's permission to repair their damaged homes and to connect to the Bermuda Beach sewer line. However, each time Plaintiffs submitted the requisite permit applications, the Public Works Department either refused to accept the applications or denied them outright. Plaintiffs' requests for utility services were handled in a similar manner. On July 5, 2001, Plaintiffs received ordinary city permits allowing them to connect to the public sewer line and to have water service restored. The Mikeskas allege that they installed all equipment necessary to connect to the sewer line. The Smiths, who were living in Colorado at the time, did not make repairs to connect to the sewer line.

On August 1, 2001, the City informed Plaintiffs that coastal regulations and official municipal policy prevented the City from issuing permits of any kind to Plaintiffs. *See* Plaintiffs' Response Exh. 2. On August 6, 2001, the City revoked the sewer tap permits issued to Plaintiffs on July 5, 2001. *See* Plaintiffs' Response Exh. 6. On August 7, 2001, city workers entered Plaintiffs' properties, digging up a sewer line that the Mikeskas had installed (and which they allege was authorized by the previously issued sewer tap permit) and removing water meters from both properties.

Of the 107 homes on the GLO 100% List, 53 were located on west Galveston Island. Forty-two of these 53 homes were located within the City's incorporated limits. Five of these 42 homes were voluntarily removed by their owners, leaving 37 homes on the GLO 100% List and within the City's incorporated limits. Plaintiffs allege that the City allowed the owners of 30 of these homes to make repairs and to access City utilities. Only 7 homes, including Plaintiffs', were denied permission to repair and access to City utilities. Plaintiffs maintain that these 37 homes were similarly situated and that the City's unequal treatment was unlawful.

Plaintiffs filed their Complaint and Application for Preliminary Injunction on January 23, 2002. On February 11, 2002, this Court issued its Order for Preliminary Injunction, ordering the City to issue the necessary permits to Plaintiffs or to acquiesce in the restoration of utilities and repair of their homes without necessary permits. *See* Order for Preliminary Injunction, Docket Entry 32. Plaintiffs allege that before the date of this Court's Order, all but two of the homes east of Pabst Road in Bermuda Beach had been allowed to reconnect to City utilities.

On May 15, 2002, Plaintiffs filed their Second Amended Complaint. In Count One, Plaintiffs allege that the City's actions pursuant to official municipal policy deprived Plaintiffs of their protected property interests in violation of Plaintiffs' substantive due process rights. In Count Two, Plaintiffs allege that the City's conduct pursuant to official municipal policy constitutes a taking of Plaintiffs' private property for public use without just compensation in violation of the Fifth Amendment as applied to the several states through the Fourteenth Amendment. In Count Three, Plaintiffs allege that the City's consistent refusal to permit Plaintiffs to repair and maintain their homes, including the refusal of access to municipal utility and sewer services, constitutes a violation of Plaintiffs' right to equal protection under the Fourteenth Amendment. Plaintiffs assert their takings, due process, and equal protection claims through 42 U.S.C. § 1983, alleging that the City deprived them of their constitutional rights under color of state law. Plaintiffs allege that the City's unconstitutional actions have caused substantial loss of rental income, loss of personal use and enjoyment of Plaintiffs' properties, damage to the homes themselves due to Plaintiffs' inability to maintain or repair them, and emotional distress. The Mikeskas claim damages of $217,049.82; the Smiths claim damages of $122,803.80. Plaintiffs also claim that they are entitled to attorneys' fees under 42 U.S.C. § 1988.

## II. Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When one party moves for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

## III. Analysis

### A. Takings Claims

■ The City maintains that Plaintiffs' claims under the Takings Clause are not yet ripe and must be dismissed. It is well-

settled that "[a] takings claim is not ripe until (1) the relevant governmental unit has reached a final decision as to what will be done with the property and (2) the plaintiff has sought compensation through whatever adequate procedures the state provides." *Sandy Creek Investors, Ltd. v. City of Jonestown,* 325 F.3d 623, 626 (5th Cir.2003) (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 194–95, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985)); *see also John Corp. v. City of Houston,* 214 F.3d 573, 581 (5th Cir.2000) ("[A] violation of the Takings Clause does not occur until just compensation has been denied ...."). Plaintiffs devote a portion of their Response to the issue of finality, but they do not allege or show that they have sought compensation through state procedures. Because Plaintiffs cannot show that they have been denied just compensation by the City, their takings claim is not ripe for adjudication. Accordingly, Defendant's Motion for Summary Judgment is hereby **GRANTED**, and Plaintiffs' takings claim is hereby **DISMISSED WITHOUT PREJUDICE.**

### B. Due Process and Equal Protection

#### 1. Threshold Requirement of Municipal Policy

In order to prevail on a § 1983 claim against a municipality, a plaintiff must establish three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.2001) (quoting *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)). The City argues that Plaintiffs' § 1983 claims must fail because they cannot demonstrate that any of the actions that allegedly caused their injuries resulted from official policy.

Plaintiffs base their claims in part on the theory that the City intended to appropriate their property for use as a public parking lot. According to Plaintiffs, the City's refusal to provide utilities or sewage access was part of an effort to drive down the value of Plaintiffs' properties in order to escape its obligation to provide just compensation for the taking. *See* Plaintiffs' Response at 4 (citing Technical Memorandum: Options—Future Public Beach Access in the City of Galveston, Plaintiffs' Exh. 9). The City maintains that the alleged plan to take Plaintiffs' property and convert it to public beach parking was merely a proposal prepared by an independent consultant. The City also points out that this proposal was never adopted by the City, as evidenced by the fact that Plaintiffs' property was never converted to beach parking.

The record supports the City's argument to the extent that it relies upon the proposed use of Plaintiffs' property for beach parking, but that is not the only official decision at issue. Plaintiffs also complain about the City's mere refusal to allow them access to utilities and sewer services for roughly two years after Frances struck. Regardless of the ultimate purpose of the denial, Plaintiffs claim that the City's refusal to provide them services violated their constitutional rights.

█ The City persists in denying that Plaintiffs can identify a policymaker or a policy that caused their alleged damages. It offers the unsupported statement that "[n]either the planning department nor the public utility department are 'final policy making authorities' as a matter of law." Reply at 3. The City's argument on this issue reflects a misunderstanding of the purpose of the municipal policy requirement. Because all relevant decisions to deny utility and sewer services to Plaintiffs can be attributed to the City, the Court concludes that the decisions constituted official policy for purposes of § 1983.

The "official policy" requirement articulated in *Monell* derives from the Court's rejection of vicarious municipal liability under § 1983, *see Piotrowski*, 237 F.3d at 578 (citing *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997)), and ensures that "isolated unconstitutional actions by municipal employees" do not trigger liability. *Id.* The official policy requirements are intended to "distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Id.* The City does not allege, nor does the record support the inference, that the City's continued refusal to issue permits to Plaintiffs resulted from the action of a maverick City employee.

As evidence of an official policy, Plaintiffs submit a letter from the City to the Mikeskas, which states, "I received a call from the Sewer Collection Department informing me that your particular address was on a list from the Planning Department that listed structures that encroached on the public beaches and should not be issues [*sic*] Sewer Tap Permits. It has been the Sewer Collection Department's policy to not install sewer taps for addresses on this Planning Department list." Plaintiffs' Response, Exh. 11. This letter is at least sufficient to raise a fact issue on the question of City policy. Because the record supports the inference that the denial of permits was an implementation of official city policy, Plaintiffs satisfy the threshold requirement of § 1983.

### 2. Substantive Due Process

■ Plaintiffs allege that the City's continued refusal to issue utility and sewage permits violated their substantive due process ·rights.[1] To prove a violation of substantive due process, Plaintiffs must show (1) a denial of a constitutionally protected property right and (2) that the denial was not rationally related to a legitimate governmental interest. *See Simi Investment Co. v. Harris County*, 236 F.3d 240 (5th Cir.2000). Plaintiffs claim a protected property interest in their homes, in collecting rents, and in continued public utility services. *See Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1046 (5th Cir.1998) (explaining that Texas law recognizes a property interest in continued utility service and the ability to collect rent). Plaintiffs allege that the City's repeated denial of permits violates due process because the City's ordinance regarding Beachfront Certificates is unconstitutionally discriminatory, overbroad, and vague. A claim that city ordinances are unconstitutionally vague is sufficient to state a claim under the Due Process Clause. *See United States v. Insco*, 496 F.2d 204, 208 (5th

---

1. Plaintiffs allege, in their Response to the City's Motion for Summary Judgment, that the City denied their procedural due process rights under the Fourteenth Amendment. Because the allegations in Plaintiff's Second Amended Complaint are based on the denial of Plaintiffs' property interests, as opposed to the process through which the denial occurred, Plaintiffs do not appear to state a procedural due process claim. *See* Second Amended Complaint paras. 43–47. Accordingly, a procedural due process claim is not properly before the Court.

Even assuming that Plaintiffs state such a claim, it is not yet ripe for review. Any procedural due process claim would necessarily arise out of the procedures involved in the City's consistent denial of permits to Plaintiffs. The City's denial allegedly resulted in the deprivation of Plaintiffs' property interest—the alleged unconstitutional taking. Until a takings claim has been resolved, sufficient facts do not exist to resolve the question of what procedure should have preceded the taking. *See John Corp.*, 214 F.3d at 585; *cf. Williamson County*, 473 U.S. at 195 n. 14, 105 S.Ct. at 3121 n. 14 ("Unlike the Due Process Clause, ... the Just Compensation Clause has never been held to require pretaking process or compensation.").

Cir.1974) ("Vaguely phrased measures run afoul of substantive due process by failing to convey with reasonable certainty the statute's intended sweep."), *cited in John Corp. v. City of Houston,* 214 F.3d 573, 585 (5th Cir.2000). Plaintiffs also allege that the City arbitrarily enforced the Beachfront Certificate ordinance.

The Court agrees that Plaintiffs had protected property interests in their homes and in access to public utility services. The question remains, however, whether the City arbitrarily or irrationally deprived them of their property interests. The City offers three arguments for summary judgment on Plaintiffs' substantive due process claim: (1) Plaintiffs' claims are moot; (2) Plaintiffs' claims must fail because their alleged injury resulted from executive action rather than legislative action; and (3) the City's interpretation of the Open Beaches Act and the Dune Protection Act were reasonably related to the legitimate goal of protecting the public's access to Galveston beaches. Because the City's actions were rationally related to the protection of the public's access to and easement over the public beach, the Court determines that the City is entitled to summary judgment.

First, the City claims that the legislature's amendment of the Open Beaches Act, together with the City's adoption of a Beach Access Plan that does not impact the beachfront homeowners, moots Plaintiffs' substantive due process claim. The doctrine of mootness arises out of the constitutional limitation of federal judicial power to "Cases" and "Controversies." *See* U.S. Const. Art. III. The case-or-controversy requirement ensures that federal courts are limited to "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980). A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (citation omitted). The Supreme Court has described mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Geraghty,* 445 U.S. at 397, 100 S.Ct. at 1209 (citing Monaghan, *Constitutional Adjudication: The Who and When,* 82 Yale L.J. 1363, 1384 (1973)).

■ Defendant's mootness argument is based on the following reasoning: the applicable law has been clarified by the amendment of state law and by the adoption of a city ordinance; the activities that form the basis of Plaintiffs' complaint will not occur again; Plaintiffs have no continuing interest in this case because they do not face future denial of utility permits or appropriation of their property; therefore, there is no longer a live controversy. Defendant's suggestion of mootness is fatally flawed, however, because Plaintiffs seek money damages for the deprivation of their property rights. The Supreme Court has explained that a plaintiff's "fear of mischievious defendants only materializes in claims for equitable relief, for so long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case." *Buckhannon Bd. and Care Home, Inc. v. West Virginia,* 532 U.S. 598, 609, 121 S.Ct. 1835, 1842, 149 L.Ed.2d 855 (2001). The alteration of the legal background does not affect Plaintiffs' claim that the City violated the law that existed at the time they applied for permits, causing them to suffer damages. Plaintiffs retain a monetary interest in this case, and the Court remains theoretically capable of providing relief. Accordingly, the case remains ripe for adjudication.

Second, the City argues that Plaintiffs' substantive due process claim must fail because it is based on executive, rather than legislative, acts. The City cites *McKinney v. Pate*, 20 F.3d 1550 (11th Cir.1994) (en banc), for the proposition that substantive due process protects against arbitrary legislative action, not arbitrary executive action. The City argues that, in order to prevail on their substantive due process claims, Plaintiffs would have to show that the City's activities constituted legislative conduct. According to the City, the activity underlying Plaintiffs' complaint was executive in nature because it was undertaken by various City employees and administrators applying existing rules and ordinances specifically to the beachfront homeowners, not by the City as a body enacting legislation.

Plaintiffs' scattershot response to this argument does not offer, beyond the allegation that the City misinterpreted the law, clarification of the precise legal question raised by the substantive due process claim. Nevertheless, Defendant's argument is unavailing. The City does not offer any explanation why or how the legislative-executive distinction discussed in *McKinney* applies to the present case. Brief examination of the Eleventh Circuit's opinion shows that the distinction was invoked with regard to state employment cases. *See McKinney*, 20 F.3d at 1560 ("Supreme Court precedent demonstrates that an employee with a property right in employment is protected only by the pro-

cedural component of the Due Process Clause, not its substantive component."). The City does not explain how the legislative-executive dichotomy underlying state employment due process cases extends to the present case, and the Court declines to fashion an argument of its own accord.[2]

■ Finally, the City contends that its interpretation and enforcement of the Open Beaches Act and Dune Protection Act were required by state law and qualify as reasonable, non-arbitrary decisions designed to accomplish the legitimate goal of enforcing and maintaining the public's easement on the public beach. The City notes that the Texas legislature has amended the Natural Resources Code to permit Open Beaches laws to be suspended for a period of two years after a storm that moves the vegetation line establishing the public beach. Tex. Nat. Res.Code Ann. § 61.0185(a)(1) (Vernon Supp 2004). The statute also provides latitude to local governments to issue permits and reconnect utilities to houses subject to an order of suspension:

> While an order issued under this section is in effect, a local government may:
>
> > (1) issue a certificate or permit authorizing repair of a house subject to the order if the local government determines that the repair:
> >
> > > (A) is solely to make the house habitable;

2. *McKinney* suggests another, perhaps more promising theory—that the Due Process Clause provides substantive protection only to rights created by the constitution, not by state law. *See McKinney*, 20 F.3d at 1556 ("[A]reas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.'") (quoting *Regents of Univ. of Mich. v.*

*Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring)). In his *Ewing* concurrence, Justice Powell noted that property interests were protected only by procedural due process. *See Ewing*, 474 U.S. at 229, 106 S.Ct. at 515 (Powell, J., concurring). Because no such argument appears in the City's Motion, however, and because independent grounds support summary judgment in favor of the City, consideration of this doctrine is not necessary to the resolution of the case.

(B) complies with rules adopted by the commissioner under Section 61.011(d)(7); and

(C) does not increase the footprint of the house or involve the use of concrete, Fibercrete, ˮor other impervious materials seaward of the line of vegetation; and

(2) allow utilities to be reconnected to a house subject to the order.

*Id.* § 61.0185(a)(1). Plaintiffs contend that the reconnection of their utility services was not an obstruction or interference with the public's beach easement. Plaintiffs also maintain that reconnection of public utilities is not contemplated by the Texas Open Beaches Act. The City argues that if the Open Beaches Act did not address the provision of public utilities, as Plaintiffs argue, the legislature would have no reason to grant a city the right to allow utilities to be reconnected subject to an order of the Land Commissioner suspending enforcement of the Open Beaches Act.

The Texas Open Beaches Act imposes a duty on local governments to "adopt a plan for preserving and enhancing access to and use of public beaches within the jurisdiction of the local government." *Id.* § 61.015(a). The Act provides specifically that municipalities "may adopt and apply any appropriate ordinances within its extraterritorial jurisdiction to effect the purposes of this subchapter." *Id.* The physical damage to the beach and Plaintiffs' homes caused by Tropical Storm Frances obviously created a conflict between the City's obligation to ensure public beach access and its obligation to provide utility services to property owners. *See Hidden Oaks,* 138 F.3d at 1046. In the light of this conflict, the mere fact that Plaintiffs' utility service was interrupted cannot form the basis of a valid legal claim, much less a violation of substantive due process. The question is whether the City's actions were reasonably related to the legitimate goal of protecting the public's access to Galveston's beaches. *See Simi Investment Co.,* 236 F.3d at 251.

Tropical Storm Frances materially altered the physical landscape of the Bermuda Beach subdivision such that Plaintiffs' homes extended substantially over the public beach. As noted above, state law requires the City to protect the public's access to and use of the state's public beaches. To the extent that the City's actions, including denial of utilities and building permits to Plaintiffs, interfered with Plaintiffs' property interests, those actions were calculated to comply with the City's duties under state law. Given the circumstances, the City's actions cannot be characterized as arbitrary or capricious; rather, they were rationally related to the City's duty under Texas law to maintain public beach access. Accordingly, the City's Motion for Summary Judgment is hereby **GRANTED**.

*3. Equal Protection*

 Plaintiffs allege that the City arbitrarily singled them out, in violation of the Equal Protection Clause, by refusing to issue utility and sewer permits. It is well-settled that "the Equal Protection Clause of the Fourteenth Amendment requires that all similarly situated persons be treated substantially alike." *Vulcan Materials Co. v. City of Tehuacana,* 238 F.3d 382, 388–89 (5th Cir.2001). Unless the operative classification is inherently suspect or affects fundamental rights, rational-basis scrutiny applies. *See id.* at 389. Provided that a governmental classification is rationally related to a legitimate governmental objective, it will survive rational-basis scrutiny. *See id.*

 Plaintiffs clearly satisfy the first prerequisite to an equal protection claim, as they raise a genuine issue of fact on the question whether similarly situated indi-

viduals were treated differently. The record demonstrates that the City treated them differently from other homeowners on the GLO 100% List. Nevertheless, Plaintiffs fail to satisfy another prerequisite to a valid equal protection claim—alleging facts which suggest that the policy in question is not rationally related to a legitimate state interest. The record indicates that the City's actions were motivated by its desire to comply with the Texas Open Beaches Act and directions from the Texas General Land Office. Actions taken by the City to protect the public beaches from interference are rationally related to a legitimate state interest as a matter of law. Accordingly, Defendant's Motion for Summary Judgment on Plaintiffs' equal protection claim is hereby **GRANTED**.

IV. Conclusion

This is the latest iteration of a series of cases involving damage to beachfront homes by Tropical Storm Frances. This Court has noted in open court and in previous Orders that when property owners build homes on the edge of a barrier island whose borders are subject to dramatic erosion by the sea, they incur substantial risks. The shoreline that a beachfront homeowner enjoys today may be one hundred feet behind his home tomorrow. It is the City's duty, as a matter of practical reality and state law, to deal with the fruition of such risks in a manner that serves the collective interest of all of its citizens and property owners. The Court has given wide latitude to Plaintiffs, and the City should be commended for giving Plaintiffs the benefit of every reasonable doubt, but neither the City nor this Court can fight the laws of geography or the whims of nature. The damage to Plaintiffs' property created an unfortunate situation, but the City's response did not create a constitutional situation. On the record before the Court, a jury could not conclude that the City's exercise of its police authority violated Plaintiffs' federal constitutional rights.

For the reasons stated above, the City's Motion for Summary Judgment is hereby **GRANTED**. Plaintiffs' claims under the Takings Clause are hereby **DISMISSED WITHOUT PREJUDICE**. Each and all of Plaintiffs' remaining claims are hereby respectfully **DISMISSED WITH PREJUDICE**. All outstanding Motions not addressed in this Order are hereby respectfully **DENIED**. Each Party is to bear its own taxable costs, attorneys' fees, and expenses incurred herein to date.

**IT IS SO ORDERED**