REVISED, JANUARY 24, 2001

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 99-51013

———————————

VULCAN MATERIALS COMPANY,

                                        Plaintiff-Appellant,

        versus

THE CITY OF TEHUACANA,

                                        Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Western District of Texas

———————————

January 23, 2001

Before GARWOOD, HIGGINBOTHAM and STEWART, Circuit Judges.

GARWOOD, Circuit Judge:

        Plaintiff-Appellant Vulcan Materials Company ("Vulcan"), a
New Jersey corporation with its principal place of business in
Birmingham, Alabama, brought this action against Defendant-
Appellee the City of Tehuacana ("the City"), a municipality in
Limestone County, Texas, alleging that a 1998 ordinance passed by
the City Council forbidding certain quarrying or mining
activities violates Vulcan's rights under both the United States

and Texas Constitutions.  Vulcan appeals the district court's refusal to exercise jurisdiction over its state constitutional and federal declaratory judgment claims as well as the dismissal of its federal substantive due process and equal protection claims.  We affirm in part and reverse and remand in part.

### Facts and Proceedings Below

In October 1997, Vulcan leased the single limestone quarry that is the subject of this action.  The quarry consists of mining areas, reserves, and processing facilities.  Part of the quarry lies within the Tehuacana city limits.  Vulcan claims it made a substantial investment in acquiring the right to operate the quarry, reasonably expecting to mine the entire quarry, including that part within the City limits.  On December 8, 1998, the City adopted an ordinance[1] that prohibits Vulcan from conducting certain mining or quarrying operations within the City

---

[1]Ordinance No. 12898 states, in relevant part:

**Section I.**    It shall be unlawful for any person, company, entity, or corporation to engage in the following activities within the city limits of the City of Tehuacana, Limestone County, Texas:
   A.   the quarrying or mining of rock utilizing blasting operations or use of explosives, or surface mining;
   B.   the use of explosives for the purpose of blasting rock, or in connection with mining or quarrying operations;
   C.   the use of heavy equipment in connection with quarrying or mining operations within the city limits of Tehuacana, Limestone County, Texas;
   D.   the use of explosives for any commercial or industrial activity or for any other reason except the use of fireworks in connection with celebrations as may be allowed by law from time to time.

limits.

On December 15, 1998, Vulcan brought this action against the City, seeking a declaratory judgment pursuant to 28 U.S.C. § 2201, injunctive relief pursuant to 28 U.S.C. § 2202 and 42 U.S.C. § 1983, and damages pursuant to 42 U.S.C. § 1983. Specifically, Vulcan asserted a federal takings claim, a state inverse-condemnation (takings) claim, and state and federal substantive due process, procedural due process, and equal protection claims. Vulcan also sought a declaratory judgment that a 1981 ordinance of the City forbidding the mining of minerals does not apply to its activities. Jurisdiction over the federal claims was predicated upon 28 U.S.C. § 1331, while jurisdiction over the state claims was based upon 28 U.S.C. § 1367 and, alternatively, 28 U.S.C. § 1332.

The City filed a motion to dismiss Vulcan's complaint for want of subject matter jurisdiction and for failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On August 20, 1999, the district court dismissed Vulcan's federal takings claim as not ripe for adjudication under Rule 12(b)(1) and Vulcan's remaining federal constitutional claims under Rule 12(b)(6). The district court also declined to exercise jurisdiction over Vulcan's state constitutional claims and its federal declaratory judgment claim regarding the 1981 ordinance.

3

Vulcan now appeals the district court's refusal to exercise jurisdiction over its state constitutional and federal declaratory judgment claims as well as the dismissal of its federal substantive due process and equal protection claims. Vulcan does not appeal the dismissal of its federal takings claim or its federal procedural due process claim.

**Discussion**

I.   Inverse-Condemnation

The district court refused to exercise diversity jurisdiction over Vulcan's Texas law inverse-condemnation claim, reasoning that our decision in *Samaad v. City of Dallas*, 940 F.2d 925 (5th Cir. 1991) prevents the exercise of diversity jurisdiction over state takings claims.  In *Samaad* jurisdiction was based entirely on sections 1331 and 1367; no diversity jurisdiction was present or asserted.

The *Samaad* plaintiffs claimed that grand prix automobile racing in a public park owned by the City of Dallas was so disruptive that it effected a taking of their property without just compensation.  *Id*. at 928.  The *Samaad* district court granted defendants' motion for summary judgment as to the federal takings claim and dismissed the state law inverse-condemnation claim, asserted under section 1367, without prejudice.  *Id*.  The *Samaad* plaintiffs appealed the summary judgment order but apparently did not appeal the dismissal of the state takings

4

claim. *Id*. We held that the district court lacked jurisdiction to hear the federal takings claim because that claim was not ripe for adjudication. *Id*. at 934-35.

The Supreme Court established in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 105 S.Ct. 3108, 3119 (1985), that a federal takings claim does not ripen until just compensation is denied. Therefore, for a federal takings claim to become ripe, the plaintiff is required to seek compensation through the procedures the state has provided unless those procedures are unavailable or inadequate. *Id*. at 3120-22. The *Samaad* plaintiffs argued that this requirement could be satisfied by simultaneously bringing federal and state law takings claims, with the district court resolving the state claim first. *Samaad*, 940 F.2d at 934. We held that: 1) *Williamson County* could not be satisfied by simultaneously bringing federal and state takings claims; and 2) there could be no section 1367 supplemental jurisdiction over the state law claim since the federal claim that provided the sole basis of supplemental jurisdiction was not ripe. *Id*.

We do not think *Samaad* prevents district courts from exercising diversity jurisdiction over state takings claims. *Samaad* was not a diversity case. *Samaad* apparently involved an appeal only of the district court's disposition of the federal takings claim. In contrast, Vulcan appeals only the dismissal of

5

its state law inverse-condemnation claim.  *Samaad* only stands for the proposition that the *Williamson County* ripeness requirement for a federal takings claim is not satisfied by simultaneously bringing a state law takings claim.  Vulcan's position on appeal is not that it is entitled to ripen a federal takings claim by simultaneously bringing a state law takings claim.  It does not appeal the dismissal of the federal takings claim.  Vulcan only asks that the same rules of diversity jurisdiction apply to its state law inverse-condemnation claim as apply to any other state law claim a plaintiff might bring in diversity.[2]  If diversity is lacking, the second *Samaad* reason precludes the district court

---

[2]In *Ankenbrandt v. Richards*, 112 S.Ct. 2206 (1992), the Supreme Court expounded upon the domestic relations exception to diversity jurisdiction.  The exception is a narrow one, generally only prohibiting federal courts from issuing divorce, alimony, or child custody decrees.  *Id*. at 2215.  The bases for the continuing endurance of the domestic relations exception are: 1) Congress's apparent acceptance of it for over 100 years following the exception's original pronouncement in *Barber v. Barber*, 62 U.S. 582 (1859); coupled with 2) Congress's failure to mention the exception in 28 U.S.C. § 1332.  *Ankenbrandt*, 112 S.Ct. at 2213.  The Court reasoned that § 1332's "all civil actions" language was not intended to embrace cases wherein a federal court would have to issue a divorce, alimony, or child custody decree.  *Id*.

In contrast, there is no long tradition of excepting state takings claims from diversity jurisdiction.  Thus, no similar argument can be made that Congress intended to exclude such causes of action when it enacted § 1332.  *Ankenbrandt* makes clear that exceptions to § 1332 are not to be carelessly implied.  Surely it is most likely that if there were any other exceptions to section 1332, *Ankenbrandt* would have discussed them.  Recall that *Williamson County* was decided seven years *prior* to *Ankenbrandt*.  There is simply no authority for the novel proposition that "all civil actions" does not include state law takings claims.

6

from hearing the state takings claim–but that is not the case here for diversity is present.  We hold that a plaintiff may bring a state law takings claim in federal district court if the traditional requirements for diversity jurisdiction are fulfilled.

This holding is consistent with *Searl v. School-Dist. No. 2, in Lake Co., Colorado*, 8 S.Ct. 460 (1888), in which the defendant property owner was allowed to remove after a school district sued under Colorado law to condemn his property for public use.  We also recognize our agreement with the Tenth Circuit, which has held that a plaintiff may bring a state law takings claim in diversity, though apparently may not use that claim to ripen a federal takings claim brought in the same proceeding.  *SK Finance SA v. La Plata County, Board of County Commissioners*, 126 F.3d 1272, 1276 (10th Cir. 1997).  In reaching this conclusion, the Tenth Circuit misconstrued our decision in *Samaad* as requiring that state law takings claims be brought only in state court.  As we have explained, the first reason in *Samaad* only forbids a plaintiff from ripening a federal takings claim by simultaneously bringing a state takings claim.  We so note only because the Tenth Circuit's misconstruction was relied upon by the district court in refusing to exercise jurisdiction over Vulcan's Texas law inverse-condemnation claim.

The City argues that to allow a district court to hear a

7

state takings claim in diversity is to risk the danger of a district court reviewing its own decision regarding the state claim to determine if *that* decision denied the plaintiff just compensation.  We think that this would almost never be a problem.  Assume that, to prevent *res judicata* from impairing its rights, a plaintiff in diversity pleads both state and federal law takings claims.  The district court, properly following *Samaad*, dismisses the federal takings claim.  Then, following our holding today, proceeds to try the state law takings claim.  If the plaintiff wins, no difficulty is presented because, under the doctrine of collateral estoppel, the issue of damages may not be relitigated.  If the state remedy is inadequate, *Williamson County* and *Samaad* allow the plaintiff to bring the federal law takings claim without first bringing the state claim.  If the plaintiff loses, the doctrine of collateral estoppel prevents relitigation of any issues determined in the first proceeding. It would only be in the rarest of cases wherein the denial of compensation was due to some issue peculiar to state law that there could ever be a second trial.[3]  This faint possibility is

---

[3]We are not unmindful of our dictum in *Samaad* that "[t]he local entity from which a plaintiff seeks recovery should be the one to deny just compensation." *Samaad*, 940 F.2d at 934.  We think the *Samaad* panel's first reason for finding the *Williamson County* ripeness requirement unmet rested wholly on the fact that, at the time the federal claim was pleaded, compensation under the relevant state law scheme had not been denied.  Nor are we disturbed by similar dictum in *John Corp. v. City of Houston*, 214 F.3d 573, 581 & n.15 (5th Cir. 2000), which involved the exact

not enough to justify departure from the normal rules governing federal diversity jurisdiction over state law claims.  *See supra* note 2.

Finally, it appears that under Texas law Vulcan's inverse-condemnation claim is ripe for adjudication.  *Trail Enterprises, Inc. v. City of Houston*, 957 S.W.2d 625, 631-32 (1997).[4] Accordingly, we find that the district court erred when it dismissed Vulcan's state law inverse-condemnation claim.

II.  Federal Substantive Due Process

Vulcan's complaint alleges the City violated its rights

---

ripeness question presented in *Samaad*.  Nothing in *Williamson County* requires that just compensation from the state be sought in state court for the federal claim to ripen upon resolution of the state claim.  Thus, leaving open the possibility of a second trial in an extremely rare case does not run afoul of any holding in *Samaad*.

[4]We do not deny the theoretical abstract possibility that a state law takings claim, though "ripe" for state law purposes, might conceivably nevertheless actually be so unripe, speculative and contingent as not to present an Article III case or controversy.  Such a case would presumably not be within the district court's jurisdiction, under either § 1332 or § 1367.  All we are holding is that the mere fact that a state law takings claim has not been pursued to final judgment in state court does not, of itself, necessarily always render it "unripe" for purposes of federal court jurisdiction under § 1332.  Here there is nothing to suggest a lack of actual ripeness in the state law takings claim other than the fact that it has not been pursued in state court.  It is not claimed, nor does the record suggest, that the 1998 ordinance was not final and effective or that there is any provision for suspending or delaying it or for any variance from or exception to it (or that there is any special or particular or administrative provision for compensation for harm caused by the ordinance; or that there is any provision at all for such compensation other than any generally available pursuant to any inverse condemnation suit under the Texas constitution).

9

under the Due Process Clause of the Fourteenth Amendment in that the 1998 ordinance is arbitrary and unreasonable and that the means employed by the ordinance lack a real and substantial relation to the goal the City seeks to achieve. The district court dismissed this claim pursuant to Federal Rule of Civil Procedure 12(b)(6). This court reviews such dismissals *de novo*. *Fernandez-Montes v. Allied Pilots Association*, 987 F2d. 278, 284 (5th Cir. 1993). When deciding a motion to dismiss under Rule 12(b)(6), the district court must accept the plaintiff's factual allegations as true and resolve doubts as to the sufficiency of the claim in the plaintiff's favor. *Id*. The complaint should not be dismissed unless it appears "beyond a doubt that the plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief." *Id*. at 284-85 (quoting *Conley v. Gibson*, 78 S.Ct 99 (1957)) (emphasis in original).

Vulcan argues that its pleadings properly allege a due process violation under *Shelton v. City of College Station*, 780 F.2d 475 (5th Cir. 1986). While it is true that Vulcan's complaint faithfully recites the *Shelton* standard, it is equally true that it does no more than that. When a plaintiff claims that a city ordinance banning the use of explosives inside the city limits is arbitrary and unreasonable, having no substantial relation to the city's legitimate objectives, more is required from the complaint than "legal conclusions masquerading as

10

factual conclusions." *Fernandez-Montes*, 987 F.2d at 284. Here, the complaint did not contain a short and plain statement of the claim, only legal conclusions of such generality as to fail to give fair notice. Vulcan could have sought leave to amend its complaint, but chose not to.

Vulcan maintains that *Russell v. Harrison*, 736 F.2d 283 (5th Cir. 1984), supports the viability of its substantive due process claim. *Russell* involved a different type of pleading problem than exists here. The *Russell* plaintiffs failed to include the magic words "arbitrary and capricious" in their complaint. *Id*. at 288. Nevertheless, we held the complaint sufficient because the underlying facts[5] pleaded in the complaint were adequate to provide the defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Russell*, 736 F.2d at 288 (quoting *Conley*, 78 S.Ct. at 103). Vulcan has not given the City proper notice of its claim as required by Rule 8(a)(2) Fed. R. Civ. Proc. For example, Vulcan advances that the ordinance bears no real and substantial relation to its objectives, yet the complaint does not suggest how this is so or allege any facts that tend to support this gratuitous conclusion of law. See,

---

[5]The plaintiffs alleged that, after declaring a financial emergency, the defendant Board of Trustees "terminated the contracts of eighty-eight employees without regard to any uniform policy." *Russell*, 736 F.2d at 288.

11

e.g., Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357 at 319-20 (". . . the court will not accept conclusory allegations concerning the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened . . ."). Thus, Vulcan asks for much more than *Russell* pleading leniency.

Finally, Vulcan contends that it is entitled to discovery to uncover evidence revealing the City's motivation for enacting the ordinance. Essential to this position is that the enactment of the ordinance be reviewed as an adjudicative, rather than a legislative, decision. *See Shelton v. City of College Station*, 780 F.2d 475, 479-84 (5th Cir. 1986). *Shelton* involved the denial of a variance from a zoning ordinance by a board appointed by the city's elected lawmakers. *Id.* We reviewed this decision under the legislative model. *Id*. Clearly, then, an ordinance approved by the Tehuacana City Council that applies to all entities acting within the city limits must also be reviewed as a legislative act. This means that courts are free to hypothesize a rational basis for the action.[6] That the ordinance states as a

---

[6]Vulcan does not allege, or allege any facts tending to suggest, any particular motive on the part of the City Council. There is no allegation of any facially unconstitutional motive.

We also note the cases Vulcan cites for the proposition that a motive inquiry should be part of rational basis review do not concern legislative decisions, but rather administrative actions enforcing existing laws against a specific landowner. *See Acierno v. New Castle County*, 2000 WL 718346, *4 (D.Del.) (discussing the inapplicability of *Sameric Corporation of*

12

reason for its enactment the intention of a rock quarry (undoubtedly Vulcan) to begin blasting operations does not call into question its legislative character. The ordinance applies to any party who would employ the prohibited means to quarry within the city limits, and that Vulcan's impending quarrying may have provided the entire impetus behind the ordinance does not transform it into an adjudicative decision. Thus, Vulcan's federal substantive due process claim was properly dismissed.

III. Federal Equal Protection

Vulcan's complaint also alleges that, in enacting the ordinance, the City arbitrarily singled out its activities in violation of the Equal Protection Clause of the Fourteenth Amendment. The district court dismissed this claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

It is well-established that, as a general matter, the Equal Protection Clause of the Fourteenth Amendment requires that all similarly situated persons be treated substantially alike. *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996). Unless the alleged classification is inherently suspect or affects fundamental rights, rational basis review is appropriate. *Jackson Court Condominiums v. City of New Orleans*, 874 F.2d 1070,

---

*Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582 (3rd Cir. 1998), *DeBlasio v. Zoning Bd of Adjustment for the Township of West Amwell*, 53 F.3d 592 (3rd Cir. 1995), and *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667 (3rd Cir. 1991), to legislative decisions).

13

1079 (5ᵗʰ Cir. 1989). Vulcan argues that the ordinance does classify between similarly situated parties-those who utilize heavy equipment for quarrying operations (covered by the ordinance) and those who employ heavy equipment for other purposes (not covered by the ordinance). Vulcan analogizes to *Qutb v. Strauss*, 11 F.3d 488, 492 (5ᵗʰ Cir. 1993), wherein a curfew ordinance was found to distinguish between two relevant groups-those age seventeen or older and those under age seventeen.

Vulcan is correct that the ordinance only prohibits the utilization of heavy equipment in connection with quarrying or mining. However, we believe a more reasonable characterization of the ordinance is that it bans only that quarrying involving the use of blasting, explosives, surface mining, or heavy equipment. The focus of the ordinance is to proscribe only those aspects of quarrying that are likely to implicate the public's health, safety, morals, or general welfare. The ordinance applies to all actors within the city limits, not just Vulcan. That everyone is forbidden to engage in certain activities is not the same as treating similarly situated actors differently. Even if the ordinance could be construed as *classifying* between those who use heavy equipment for quarrying and those who use heavy equipment for other purposes, Vulcan's complaint still would not have stated an equal protection claim. It is well-settled that

14

"as long as a classification is rationally related to a legitimate state objective, a legislature is allowed to attack a perceived problem piecemeal." *Jackson Court Condominiums*, 874 F.2d at 1079. As discussed in Part II, *supra*, Vulcan has failed to properly plead any facts tending to suggest that the ordinance is not rationally related to a legitimate state interest.[7] Thus, Vulcan's federal equal protection claim was properly dismissed.

IV. Remaining Claims

After dismissing most of Vulcan's federal claims and its state law inverse-condemnation claim, the district court summarily dismissed Vulcan's 1981 ordinance declaratory judgment claim as well as all of Vulcan's remaining state law claims. The only stated reason for these dismissals was that the claims involved "a determination of state law and/or causes of action which the Court declines to review as there are no remaining

---

[7]We also note that Vulcan appears to (properly) concede that the purposes listed in the preamble of the ordinance (avoiding a detrimental impact on the lives of citizens from the vibration & noise of blasting, noise from heavy equipment, injury or death from overfly of rock, etc.) are legitimate and consistent with the public's health, safety, morals, or general welfare. But Vulcan asserts that, after recognizing the legitimacy of the City's goals, the district court failed to consider the extent to which the 1998 ordinance advances them. Notwithstanding the district court's silence on this issue, we think it is sufficiently obvious that the ordinance's prohibition of mining or quarrying activities involving blasting, explosives, surface mining, or the use of heavy equipment within the City limits is rationally related to the City's stated objectives. As discussed in Part II, *supra*, Vulcan failed to plead any facts that tend to diminish the obviousness of this rational relationship.

15

federal claims." It is not clear if the district court was overlooking the section 1332 allegations and the obvious diversity of the parties or if it believed that its refusal to hear Vulcan's claims was somehow justified by reasons not appearing in the opinion.

A.    State Law Claims

The district court abused its discretion when it dismissed Vulcan's state law substantive due process, procedural due process, and equal protection claims merely because they involved state law causes of action. The purpose of 28 U.S.C. § 1332 is to allow federal courts to resolve such state law claims when, as here, the requirements of 28 U.S.C. § 1332 are met. Unless there is a legitimate reason to abstain, federal courts "cannot abdicate their authority or duty in any case in favor of another jurisdiction." *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 109 S.Ct. 2506, 2513 (1989) (quoting *Chicot County v. Sherwood*, 13 S.Ct. 695 (1893)); *see also Charles Quackenbush, California Insurance Comm'r. v. Allstate Ins. Co.*, 116 S.Ct. 1712, 1720-21, 1727 (1996). There are four general categories of abstention:

> "(1) Pullman-type abstention, to avoid decision of a federal constitutional question where the case may be disposed of on questions of state law; (2) Burford-type abstention, to avoid needless conflict with the administration by a state of its own affairs; (3) abstention to leave to the states the resolution of unsettled questions of state law; and (4) abstention to avoid duplicative litigation, now frequently referred to

16

as Colorado River-type abstention."
Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4241.  We elaborated on the *Burford* and *Colorado River* abstention doctrines in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994).  As in *Trejo*, the court below erred by refusing to hear Vulcan's claims without explaining why abstention was required.

    B.    1981 Ordinance Declaratory Judgment Claim

    28 U.S.C. § 2201 provides, in relevant part: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ."  The word "may" gives the district court more discretion to refuse to hear a claim for declaratory judgment than the claims addressed in Part IV.A, *supra*.  *Trejo*, 39 F.3d at 590 & n.6, 7.  However, *Trejo* clearly established that "the district court should not dismiss . . . [a] declaratory judgment suit simply because it does not involve a question of federal law."  *Id*. at 591 n.10.  This appears to be exactly what the court below did.  *Trejo* confirmed and restated the test for the discretionary dismissal of declaratory judgment actions set forth in *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n*, 996 F.2d 774 (5th Cir. 1993).  The seven *Trejo* factors that must be considered *on the record* before a discretionary, nonmerits dismissal of a

17

declaratory judgment action occurs are:

> "[1)] whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, . . . 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy, . . . [and 7)] whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending."

*Trejo*, 39 F.3d at 590-91. *Trejo* and *Travelers* held that "unless the district court addresses and balances the purposes of the Declaratory Judgment Act and the factors relevant to the abstention doctrine on the record, it abuses its discretion." *Trejo*, 39 F.3d at 590 (quoting *Travelers,* 996 F.2d at 778). Here, as in *Travelers* and *Trejo*, the district court did not attempt to provide "even a cursory analysis of the pertinent facts and law." *Travelers*, 996 F.2d at 778. Thus, as in those cases, the dismissal of Vulcan's declaratory judgment action was improper.

## Conclusion

We AFFIRM the district court's dismissal of Vulcan's federal substantive due process and federal equal protection claims for failure to state a claim upon which relief can be granted under

18

Federal Rule of Procedure 12(b)(6).[8]  We VACATE the district court's dismissal of Vulcan's state constitutional claims and its federal declaratory judgment claim regarding the 1981 ordinance. We REMAND for proceedings consistent with this opinion.

AFFIRMED in part; REVERSED and REMANDED in part.

---

[8]We likewise affirm the dismissal of Vulcan's federal takings claim and its federal procedural due process claim, without reaching the merits of the dismissal of those claims, because Vulcan has not on this appeal challenged the dismissal of either of those claims.