Patrick MCCLURE and Maxximum Entertainment, LLC, Plaintiffs,

v.

Lieutenant William BIESENBACH, San Antonio Police Department, Rudy Davila, San Antonio Code Compliance Supervisor, and the City of San Antonio, Defendants.

No. SA–04–CV–0797–RF.

United States District Court,
W.D. Texas, San Antonio Division.

March 2, 2005.

Order Denying Reconsideration
April 12, 2005.

Paul M. Terrill, Hazen & Terrill, P.C., Robert Buckner McKinney, Law Office of Buck McKinney, Austin, TX, for Plaintiffs.

Shawn K. Fitzpatrick, Attorney at Law, San Antonio, TX, for Defendants.

## *ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANT CITY OF SAN ANTONIO'S MOTION TO DISMISS*

FURGESON, District Judge.

BEFORE THE COURT is the Second Motion of Defendant City of San Antonio ("City") to Dismiss, filed on January 3, 2005, along with Plaintiffs' Response. The Court held a hearing on February 23, 2005 and finds that Plaintiffs have adequately stated causes of action against the City. As a result, Defendant City of San Antonio's Motion to Dismiss (Docket No. 24) should be GRANTED IN PART and DENIED IN PART.

### FACTUAL AND PROCEDURAL BACKGROUND

The instant case is brought against the City of San Antonio and two of its officers for their actions in preventing Plaintiffs from producing an outdoor music concert under a City permit issued for the event. Plaintiffs bring six causes of action against the officers and the City for misapplying municipal zoning and noise ordinances and engaging in intimidating behavior. (Docket No. 1) Plaintiffs seek damages for lost profits, out-of-pocket expenses, and severe emotional distress, among other theories, and demand a jury trial.

Plaintiff Patrick McClure is the founder and owner of co-Plaintiff Maxximum Entertainment, LLC ("ME"). In late 2003, Plaintiffs began planning a large-scale, three-day outdoor music event to take place in San Antonio, Texas in April 2004. Plaintiffs obtained agreements with a number of musical acts to perform, national

sponsorship, and several local radio stations to promote and broadcast the event.

Plaintiffs leased property owned by and directly adjacent to the Cowboy's Dance Hall at the southwest corner of I–35 and Loop 410 to stage the event. The property designated for the event is zoned "industrial," so Plaintiffs were required to obtain a permit in order to lawfully use the land for an outdoor rock concert. Plaintiffs hired an architect to assist in the permitting process and submit a site plan for the event. On April 16, 2004, the City of San Antonio granted Temporary Certificate of Occupancy No. 986537 ("permit") for a special use of the property for a "fairground and/or stadium event."[1] The permit referred to the event as an open area concert which it described as "Cowboy Dance Hall Special Event."[2] Plaintiffs contend that the recognition represented by this permit granted them an exception to the otherwise applicable municipal noise ordinance.[3]

Plaintiffs' concert event began on April 18, 2004. That evening, San Antonio Police Department ("SAPD") officers responded to local noise complaints. After discussions with the officers, event staffers adjusted the sound levels and no citations were issued. On April 19, 2004, Defendant SAPD Sergeant William Biesenbach visited the concert cite and spoke with sound engineer Carlos Garcia. Biesenbach informed Garcia that the SAPD would be carefully monitoring the situation that evening, reviewing all permits and enforcing code compliance.

During the afternoon of April 19, Sergeant Biesenbach returned to the venue where he was met by co-Defendant Rudy Davila, Supervisor of the Abatement Patrol Division of the City Code Compliance Department. Defendants Biesenbach and Davila sought to determine compliance with the noise ordinance. The two men then engaged in several actions of which Plaintiffs complain here. For example, Biesenbach and Davila took the position that, without regard for the Plaintiffs' permit, Plaintiffs were required to keep the concert sound levels within normal limits set forth in the municipal code. Further, Biesenbach and Davila—allegedly erroneously claiming that the property was zoned for "business"—enforced an improper limit on the sound coming from Plaintiffs' event.[4]

Plaintiffs allege that Biesenbach and Davila took a number of other actions that suggest willful bias and/or malicious intent. For example, Davila took sound measurements from the soundboard and, at one point, directly in front of the stage, despite the requirement that the measurements be taken at a location outside the boundary line of the property.[5] Davila failed to utilize a windscreen on the noise meter and held the device above his head, both of which were also in contravention of appli-

---

1. A copy of the permit and related materials is attached to Defendant Rudy Davila's Motion for Summary Judgment (Docket No. 30). Defendant City of San Antonio incorporates arguments and evidence submitted with Defendant Davila's motion into the instant motion to dismiss (Docket No. 24, at 5–6), seeking for the Court to treat the motion as one for summary judgment under Rule 56.

2. *Id.*

3. The San Antonio Code of Ordinances, Ch. 21, art. 3 § 21–55 provides that the normal noise ordinances do not apply to "sound generated at a scheduled stadium event."

4. The property is actually zoned "industrial", which has a higher sound limit (72 decibels or "dB") than the "business" zone, which has a limit of 70 dB.

5. San Antonio Code of Ordinances, Ch. 21, art. 3 § 21–56: "Method of Noise Measurement."

cable municipal noise ordinance provisions.[6]

Plaintiffs additionally allege that Defendants mistakenly considered ambient noise conditions in calculating the event noise, which is also contrary to the ordinance.[7] Plaintiffs contend that this issue is particularly significant, given the weather conditions on April 19, 2004,[8] and the location of the concert venue near the intersection of two busy interstate highways in San Antonio. Plaintiffs allege that both of these factors produced significant ambient noise and that this resulted in readings that were much higher than appropriate. However, Biesenbach and Davila included the ambient noise in their measurements and found that Plaintiffs were violating the applicable limits as a result of this noise.

In addition to allegations regarding Defendants' misapplication of the municipal noise ordinance, Plaintiffs also charge that Biesenbach and Davila engaged in unnecessary "bullying" tactics that amount to intimidation. These tactics include bringing an estimated thirty SAPD officers to the concert venue and threatening staffers and band members with arrest and jail time if the concert continued. Several officers also allegedly informed concert patrons that the show was going to be cancelled as they waited in line for admittance. Finally, during the first musical act on April 19, Biesenbach asked sound engineer Garcia if the volume could be turned down. After Garcia indicated that adjustments could only be made between songs, Biesenbach ordered that the concert be cancelled.

Plaintiffs filed suit on September 3, 2004, bringing six causes of action against Biesenbach, Davila, and the City of San Antonio. (Docket No. 1) They bring claims under 42 U.S.C. § 1983, the federal declaratory judgment statute, and Texas state law, seeking a declaratory judgment and other relief. (Docket Nos. 1, 22) On October 13, Defendant City of San Antonio moved to dismiss. (Docket No. 6) On October 26, 2004, the Court ordered that the matter be abated, pending resolution of proceedings related to a bankruptcy filing by Plaintiff McClure. (Docket No. 11) On December 20, the Court granted Plaintiffs' motion for leave to amend their complaint (Docket No. 21) and Plaintiffs filed their First Amended Complaint on that day. (Docket No. 22) Defendant City of San Antonio then filed its Second Motion to Dismiss on January 3, 2005. (Docket No. 24)

Defendant City again moves to dismiss under Rule 12(b)(6), claiming that Plaintiffs have failed to state essential elements of their claims. The City also claims that this Court is without jurisdiction over Plaintiffs' takings claims brought under the Texas Constitution, since this is not a diversity action.[9]

### Discussion

### I. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

#### A. Rule 12(b)(1) Standard

When motions to dismiss based on Fed.R.Civ.P. 12(b)(1) and 12(b)(6) are filed together, the court should consider

---

6. *Id.*

7. *Id.*

8. A windstorm had blown into San Antonio on Sunday April 18th, producing higher than average wind speeds, which Plaintiffs allege cause sound from the event to travel farther than it ordinarily would have traveled.

9. Since part of the instant motion seeks dismissal of the Plaintiffs' claims under the Texas Constitution based on lack of subject matter jurisdiction, the Court will construe this argument as a motion to dismiss under Rule 12(b)(1) and analyze it accordingly.

the jurisdictional attack before addressing the attack on the merits.[10] A motion to dismiss for lack of subject matter jurisdiction should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." [11]

To assess whether subject matter jurisdiction exists, this Court may look to the complaint and the undisputed facts in the record. When analyzing the complaint, the Court treats the allegations in the complaint as true.[12] Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff can prove no set of facts in support of his or her claim that would entitle plaintiff to relief.[13] Fundamental to this standard is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged.[14]

### B. Plaintiffs' Claim Under the Texas Constitution

■ Plaintiffs' fourth cause of action is a claim under article I, section 17 of the Texas Constitution, which prohibits taking of private property for public use without just compensation. The Texas Supreme Court has stated that the test under this section is whether the state intentionally performed certain acts which resulted in the taking of or damage to the plaintiff's property.[15] Recovery under this section is not allowed where the damage was caused by the negligent acts of a governmental employee.[16]

■ The City's main argument in support of dismissal of the Texas inverse condemnation, or takings, claim is that this Court lacks jurisdiction to hear the merits of a state law takings claim. In support of this argument, the City cites to the Fifth Circuit's decision in *Samaad v. City of Dallas,* claiming that this decision holds that the Court lacks jurisdiction over the Texas takings claim.[17]

In *Samaad,* the Fifth Circuit held that the district court lacked jurisdiction to hear a federal takings claim because that claim was not ripe for adjudication.[18] The court also held that plaintiffs could not satisfy the ripeness requirement by simultaneously bringing state and federal takings claims and seeking resolution on the state claims first.[19] Thus, *Samaad* does not stand for the proposition asserted: that federal courts may only exercise jurisdiction over state takings claims in diversity cases.[20]

The City also cites to *Vulcan Materials,* arguing that the Fifth Circuit held that

---

10. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001).

11. *Id.*

12. *Saraw Partnership v. United States,* 67 F.3d 567, 569 (5th Cir.1995).

13. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir.1998); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

14. *Elliott v. Foufas,* 867 F.2d 877, 880 (5th Cir.1989).

15. *State v. Hale,* 136 Tex. 29, 146 S.W.2d 731, 736 (1941).

16. *Ivey v. City of Temple,* 415 S.W.2d 542, 543 (Tex. Civ. App.-Austin 1967, *writ ref'd n.r.e.*).

17. *See Samaad v. City of Dallas,* 940 F.2d 925, 934 (5th Cir.1991). The City also cites to *Vulcan Materials Co. v. City of Tehuacana,* 238 F.3d 382 (5th Cir.2001) for the same principle.

18. *Samaad,* 940 F.2d at 934–35.

19. *Id.* at 934.

20. *Vulcan Materials,* 238 F.3d at 385 ("*Samaad* stands only for the proposition that the *Williamson County* ripeness requirement for a federal takings claim is not satisfied by simul-

district courts may only hear state takings claims in diversity cases where all the requirements of diversity jurisdiction are met.[21] Since Plaintiffs bring this case asserting federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3), the City argues that jurisdiction over the Texas inverse condemnation claim is not appropriate here.

In response, Plaintiffs argue that the City has mischaracterized the holdings of *Samaad* and *Vulcan Materials*. The issue in *Samaad* was whether a court could exercise pendent jurisdiction over a state law takings claim when the only federal claim was a takings claim.[22] The question in *Vulcan Materials* was whether *Samaad* prevented district courts from exercising diversity jurisdiction over state takings claims.[23] As Plaintiffs point out, the issue before this Court is different. Here, Plaintiffs do not assert a federal takings claim, and the Court has federal question jurisdiction over the other federal claims asserted in Plaintiffs' First Amended Complaint. In this context, the Court may exercise supplemental jurisdiction over Plaintiffs' Texas inverse condemnation claim under 28 U.S.C. § 1367.

## II. *Motion to Dismiss for Failure to State a Claim*

### A. Rule 12(b)(6) Standard

For purposes of a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint must be liberally construed in favor of the plaintiff, and all the facts pleaded in the complaint must be taken as true.[24] Dismissal on this basis is a disfavored means of disposing of a case,[25] and district courts should avoid such dismissals "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[26] "The question therefore is whether, in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief."[27]

### B. Plaintiffs' Federal and State Claims

Plaintiffs bring five other causes of action and the City moves to dismiss four of them, arguing that Plaintiffs fail to state proper claims. The Court will address these claims in turn to ascertain whether Plaintiffs state claims upon which relief may be granted.

#### 1. *Claims of Municipal Liability Claim Under Section 1983*

■ Section 1983 prohibits "persons" acting under the color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution

---

taneously bringing a state law takings claim.")

21. *Id.* at 386.

22. *See Samaad*, 940 F.2d at 934 (". . . assuming a takings claim were the only federal claim asserted in the complaint").

23. *Vulcan Materials*, 238 F.3d at 385.

24. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir.1986).

25. *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 365 (5th Cir.2000).

26. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

27. *Brown v. Nationsbank Corp.*, 188 F.3d 579, 586 (5th Cir.1999) (citing 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 601 (1969)).

and laws ...." [28] Municipalities and cities qualify as persons liable to suit under Section 1983.[29]

■ A governmental entity can be sued and subjected to monetary damages and injunctive relief under Section 1983 only if its official policy or custom causes a person to be deprived of a federally protected right.[30] The Supreme Court has also recognized that municipalities may not be subjected to liability under Section 1983 under the doctrine of *respondeat superior* for merely employing a tortfeasor.[31]

■ As the City notes, at one time the Fifth Circuit applied a heightened pleading standard to Section 1983 allegations against municipalities.[32] However, the Supreme Court has disapproved of this approach.[33] In *Leatherman*, the Supreme Court held that allegations of municipal liability must meet the requirements of Rule 8, which requires a short and plain statement of the claim showing the pleader is entitled to relief.[34] Since then, the Fifth Circuit has set forth the relevant pleading standard for Section 1983 claims against municipalities.[35] The Fifth Circuit now holds that, to support a claim based upon the existence of an official custom or policy, the plaintiff must plead facts which show that: 1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) *the custom or policy served as the moving force behind the violation.*[36] To adequately state such a claim, Plaintiffs must also specifically describe how the policy or custom relates to the constitutional violation.[37]

The City argues that Plaintiffs fail to support their three claims that the City is liable to them under Section 1983 [38] with specific description of what property rights are affected and how a policy or custom of the City relates to the alleged constitutional violation.

In response, Plaintiffs claim that the *Meadowbriar* standard articulated by the Fifth Circuit applies by definition only when a lower-level municipal figure causes the alleged constitutional deprivation. The Court does not find that the *Meadowbriar*

28. 42 U.S.C. § 1983 (1994).

29. *See Monell v. Dept. of Social Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

30. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

31. *Id. See also Oklahoma City v. Tuttle*, 471 U.S. 808, 818, 828, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion and opinion of Brennan, J.); *St. Louis v. Praprotnik*, 485 U.S. 112, 122, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion); *Canton v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

32. *See, e.g., Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992).

33. *Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

34. *Id.* (citing FED. R. CIV. P. 8(a)(2)).

35. *See Schultea v. Wood*, 47 F.3d 1427, 1434–35 (5th Cir.1995); *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532–33 (5th Cir.1996).

36. *Id.* at 533 (citing *Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir.1987))(emphasis added).

37. *Spiller v. City of Texas City Police Dept.*, 130 F.3d 162, 167 (5th Cir.1997).

38. In their second, third, and fifth causes of action, Plaintiffs bring claims for taking property, tortiously interfering with business relationships, and interfering with Plaintiffs' free of speech under Section 1983.

decision is nearly so clear on this point. Plaintiffs further claim that municipal liability under Section 1983 is appropriate where "*actual policymakers*—as opposed to lower level employees—cause the constitutional deprivation." [39]

 Under the Fifth Circuit's decision in *Pembaur,* a municipality may be liable under Section 1983 for even a single decision made by its legislative body, even if the decision is singular and not meant as a continuing policy, "because even a single decision by such a body unquestionably constitutes an act of official government policy." [40] As long as an individual municipal employee's acts or statements constitute or represent official policy, the city faces liability under Section 1983 if the acts or statements work a constitutional deprivation. [41] As Plaintiffs point out, the outcome is the same when a city employee's actions cause the deprivation and those actions are later ratified by a policymaker. [42] Plaintiffs claim their allegations state a claim for liability against the City under any of these tests and oppose the motion to dismiss for failure to state a claim.

 As the Court notes above, the *Meadowbriar* standard requires that the municipality's custom or policy be the "moving force" behind the violation. [43] This means that the official's action must have been taken in accordance with the custom or policy for liability against the municipality to be possible under Section 1983. Here, Plaintiffs do not allege that Biesenbach and Davila acted in accordance with City policy when they found noise violations and cancelled Plaintiffs' concert on April 19, 2004. With regard to the City's municipal noise ordinances, Plaintiffs specifically contend that Biesenbach and Davila violated code requirements by failing to recognize Plaintiffs' event permit and applying incorrect noise standards when taking measurements. [44] Further, Plaintiffs specifically refer to these actions as "arbitrary and capricious violations of law and policy," [45] thus conceding that these actions were not taken in accordance with a municipal custom or policy. In response, Plaintiffs change their tone, arguing instead that Biesenbach and Davila used the sound ordinance as a pretext to shut down the concert. This is a theory Plaintiffs did not plead in their amended complaint, but it does not change the analysis here.

The Court finds that Plaintiffs themselves have conceded that the actions of Biesenbach and Davila complained of here were not taken in accordance with any

**39.** Plf.'s Resp. at 3 (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

**40.** *See* 475 U.S. at 480, 106 S.Ct. 1292 (citing *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)) (city council passed resolution firing plaintiff without pre-termination hearing); *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (city council canceled license permitting concert because of dispute over content of performance).

**41.** *Id.* (citing *Monell,* 436 U.S., at 694, 698, 98 S.Ct. 2018).

**42.** Citing *Praprotnik,* 485 U.S. at 127, 108 S.Ct. 915 ("Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.")

**43.** 81 F.3d at 533.

**44.** Plf.'s First Amend. Comp., at paras. 17–19.

**45.** *Id.* at para. 21.

City policy. Despite their attempts to argue otherwise, Plaintiffs have not alleged that the officials' actions were the result of a particular, established City policy. In fact, Plaintiffs have alleged quite forcefully that the officials' actions were taken in violation of the ordinance and permit rules. Thus, Plaintiffs fail to meet the *Meadowbriar* standard.

Plaintiffs also claim that they have adequately alleged municipal liability against the City pursuant to Section 1983 under the *Pembaur* standard because Biesenbach and Davila constituted official policymakers rather than lower-level employees and their actions can thus be attributed to the City. As Plaintiffs correctly argue, under *Pembaur* a city can be liable for even one decision by a municipal policymaker that works a constitutional deprivation, so long as the decision unquestionably constitutes an act of official government policy.[46] Plaintiffs fail to allege how the actions taken by Biesenbach and Davila constitute acts of official government policy and have thus failed to state claims for Section 1983 liability against the City under the *Pembaur* standard as well.

 Finally, Plaintiffs seek to assert a claim against the City under Section 1983 based on *Praprotnik* because the actions of Biesenbach and Davila were ratified by City Councilmen who failed to prevent the officials' actions after being advised of the enforcement action.[47] In *Praprotnik*, the Supreme Court held that

when a subordinate city employee's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.[48]

Reviewing carefully Plaintiffs' allegations, there is no contention that either Councilman Chip Haas or Ron Segovia was a policymaker whose job it was to review the decisions made or actions taken by Biesenbach and Davila or that he was authorized to do so. Further, Texas law is clear that cities may only act by and through their governing bodies.[49] Statements of individual council members are thus not binding on the City.[50]

Further, in light of Plaintiffs' specific allegations, it is clear that Councilman Segovia did not explicitly approve the actions taken and urged leniency. Although Plaintiffs try to characterize Segovia's failure to stop the enforcement action as an official ratification of the actions, this contention is patently absurd and fails to meet the Plaintiffs' standard for stating a claim of liability under Section 1983 against the City. As a result, the Court finds that Plaintiffs have failed to state claims for liability against the City under Section 1983 and will grant the City's motion to dismiss these claims.

---

**46.** 475 U.S. at 480, 106 S.Ct. 1292.

**47.** In fact, Plaintiffs allege that—during the enforcement actions by Biesenbach and Davila—event staffers "attempted to reach members of the City Council for assistance, and in fact spoke to Councilman Ron Segovia, who expressed surprise at the officers' actions and advised officers on the scene to 'be lenient.' " First Amend. Comp., at para. 24.

**48.** 485 U.S. at 127, 108 S.Ct. 915.

**49.** *Stirman v. City of Tyler*, 443 S.W.2d 354 (Tex.Civ.App.-Tyler 1969, *writ ref'd n.r.e.*); *Cook v. City of Addison*, 656 S.W.2d 650 (Tex. App.-Dallas 1983, *writ ref'd n.r.e.*).

**50.** *Id.*

### 2. Claims of Promissory and Equitable Estoppel Under State Law

■ Plaintiffs bring a claim of promissory estoppel, arguing that they reasonably relied upon the City's issuance of an event permit and expended significant sums in reliance. The City argues that the doctrine of promissory estoppel is defensive only and cannot constitute a basis for affirmative relief.[51] Further, even if it could be offensively used, promissory estoppel requires a finding that injustice can be avoided only by the enforcement of the promise.[52]

Plaintiffs respond, arguing that Texas courts allow offensive use of promissory estoppel, citing *Maguire Oil Co. v. City of Houston.*[53] Further, Texas courts sometimes consider temporary use permits like the one at issue here as promises for purposes of promissory estoppel.[54] As Plaintiffs point out, the facts in *Maguire* are similar to those before the Court. Both cases involve an individual applying for a city permit, being awarded the permit, and then having it effectively revoked. Based upon the facts and arguments set forth, the Court concludes that Plaintiffs have adequately stated a cause of action under the doctrine of promissory estoppel and

will deny the City's motion to dismiss this claim.

■ Like the defendant city in *Maguire,*[55] the City here also argues that Plaintiffs' claim for equitable estoppel should fail because the plaintiff failed to establish the five essential elements.[56] Given the Texas Court of Appeals's resolution of *Maguire,* the Court will deny the City's motion to dismiss this claim as well.

### CONCLUSION

Accordingly, it is hereby ORDERED that Defendant City of San Antonio's Motion to Dismiss (Docket No. 24) is GRANTED IN PART and DENIED IN PART.

### ORDER DENYING MOTIONS TO RECONSIDER

BEFORE THE COURT is Plaintiff's Motion for Reconsideration Under Rule 59 (Docket No. 48), filed on March 16, 2005. Also before the Court is Defendant City of San Antonio's Motion for Reconsideration (Docket No. 50), filed on March 18, 2005. Plaintiff seeks reconsideration of the Court's March 2, 2005 Order dismissing Plaintiff's 1983 claims against the City of San Antonio. (Docket No. 46) Defendant seeks reconsideration of other aspects of

---

**51.** *See Stanley v. CitiFinancial Mortg. Co., Inc.,* 121 S.W.3d 811 (Tex.App.-Beaumont 2003, *pet. denied* ); *Hruska v. First State Bank of Deanville,* 747 S.W.2d 783, 785 (Tex.1988).

**52.** *See City of Beaumont v. Excavators & Constr., Inc.,* 870 S.W.2d 123, 136–37 (Tex. App.-Beaumont 1993, *writ denied* ).

**53.** 69 S.W.3d 350 (Tex.App.-Texarkana 2002).

**54.** *Id.* at 369. *See also Shelby Operating Co. v. City of Waskom,* 964 S.W.2d 75, 80 (Tex.App.-Texarkana 1997, *pet. denied* ) (citing 5 EUGENE KUNTZ, OIL & GAS § 68.3 (1991)); *Ex parte Mata,* 925 S.W.2d 292, 295 (Tex.App.-Corpus Christi 1996, *no writ* )("The granting of licenses and permits are generally held to be privileges and not rights, although if one meets the

criteria set in order to obtain a permit or license, it may not be lawfully refused. It becomes a right.").

**55.** *Maguire,* 69 S.W.3d at 365–67.

**56.** Equitable estoppel requires (1) false representation or concealment of material facts; (2) made with actual or constructive knowledge of the facts; (3) with the intent that it should be acted upon; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations. *Johnson & Higgins of Tex. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 515–16 (Tex.1998).

the same Order. Because it finds that its initial decision was appropriate, the Court will DENY both motions to reconsider (Docket Nos. 48, 50).

### FACTUAL AND PROCEDURAL BACKGROUND

The instant case is brought against the City of San Antonio and two of its officers for their actions in preventing Plaintiffs from producing an outdoor music concert under a City permit issued for the event. The detailed facts are set out in the Court's orders on Defendants' motions to dismiss for failure to state a claim (Docket Nos. 46, 47) and need not be repeated here.

### DISCUSSION

### I. *Motions to Reconsider*

At the outset, the Court notes that the Federal Rules "do not recognize a motion for reconsideration *in haec verba*."[1] Courts in the Fifth Circuit treat so-called motions to reconsider either as motions to alter or amend under Rule 59 or as motions for relief from judgment under Rule 60.[2] Here, Plaintiffs' motion invokes Rule 59, which provides that a party may move the court to amend its judgment within ten days of entry.[3] Plaintiff filed its motion to reconsider on March 16, 2005, two weeks after the Court's entry of an order dismissing some of Plaintiff's claims. Defendant City of San Antonio also filed a motion to reconsider on March 18, 2005, without citing any Federal Rule in support.

While the Court finds both of these motions untimely filed, it normally deals with the substance of motions, eschewing dismissal on purely procedural grounds. Moreover, the Court finds that these motions are frivolous in that they attempt to re-assert arguments raised in the initial motions upon which the Court has already ruled. Still, the Court will once again visit the issues discussion in the motions. Nonetheless, the Court denies the motions to reconsider. A brief explication is in order.

### A. Plaintiffs' Motion For Reconsideration

Plaintiffs seek reconsideration based "on the narrow issue of whether or not a City 'policy, practice, or custom' was a 'moving force' of the alleged violations of Plaintiffs' constitutional rights."[4] Plaintiffs' continue to assert—as they did in their responses to the City's motion to dismiss and at the hearing—that City policy was the moving force behind Defendants' actions in shutting down their outdoor concert. However, Plaintiffs admit that the police officers' actions were taken in violation of the City policy. In their motion for reconsideration, Plaintiffs acknowledge that the City misapplied the noise ordinance but assert that this was a contributing cause of the alleged constitutional violation and Plaintiffs' claimed damages. Plaintiffs maintain that the City's noise ordinance operated as an impermissible prior restraint which operated as a moving force behind the alleged constitutional violation. The Court addressed this argument in its order granting in part Defendant's motion to dismiss. (Docket No. 46, at 9–15). The Plaintiffs' instant motion makes it necessary to do so again.

First, Plaintiffs sought to state a claim for municipal liability under Section 1983. Section 1983 prohibits "persons" acting under the color of law from depriving anoth-

---

1. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1990).

2. *Id.*

3. FED. R. CIV. P. 59(e).

4. Docket No. 48, at 1.

er of any "rights, privileges, and immunities secured by the Constitution and laws ..."[5] Municipalities and cities qualify as persons liable to suit under Section 1983.[6] The Fifth Circuit has held that, to support a claim based upon the existence of an official custom or policy, the plaintiff must plead facts which show that: 1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) *the custom or policy served as the moving force behind the violation.*[7] To adequately state such a claim, Plaintiffs must also specifically describe how the policy or custom relates to the constitutional violation.[8]

 Plaintiffs claim that Section 21–57 of the City Noise Ordinance, which authorizes City abatement officers to issue "administrative stop orders" on site, served as a policy that was the moving force behind the alleged constitutional violation. (Docket No. 48, at 3). Plaintiffs argue that because the law placed too much discretion in the hands of City employees who would enforce the ordinance it constitutes a prior restraint on speech. Plaintiffs cite *Niemotko v. Maryland*[9] and *Cantwell v. Connecticut*[10] in support for their argument that an ordinance placing too much discretion in the hands of those implementing it can operate as a prior restraint.

The Court finds significant qualitative differences between these cases—in which the ordinances at issue clearly did leave important issues to be determined by the implementing authority—and the present one and finds these cases inapposite for this reason. Specifically, the Court notes, as found in its earlier order, that the City Noise Ordinance sets forth clear standards for when noise abatement officers may exercise their discretion.[11] Thus, the Court finds that Plaintiffs' argument unavailing.

Plaintiffs also argue that the failure of their permit and the City's Noise Ordinance to delineate what qualifies as a "stadium event" contributed to the alleged violation because it allowed an abuse of the discretionary authority provided by the City's Noise Ordinance. It is certainly clear that the ambiguity over what constitutes a stadium event contributed to the dispute that arose between the parties. However, identifying an ambiguity that contributed to the dispute and concluding that the City's noise policy was the moving force behind the alleged constitutional violation are two very different logical steps. The Court is quick to recognize the former and finds no support for the latter. The Court agrees with Defendant that Plaintiffs have not alleged a prior restraint or First Amendment claim against the City, a conclusion supported by reference to the Plaintiffs' Complaint, which does not even assert a First Amendment violation against the City. (Docket No. 1)

Further, referring again to the provisions of the noise ordinance, it is clear that the ordinance is not a prior restraint.

---

5. 42 U.S.C. § 1983 (1994).

6. *See Monell v. Dept. of Social Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

7. *Id.* at 533 (citing *Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir.1987))(emphasis added).

8. *Spiller v. City of Texas City Police Dept.*, 130 F.3d 162, 167 (5th Cir.1997).

9. 340 U.S. 268, 271, 71 S.Ct. 325, 95 L.Ed. 267 (1951).

10. 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

11. *See* San Antonio Noise Ordinance § 21–57(a)(setting forth specific noise limits and authorizing officers to issue stop orders when individuals violate specific limits).

Section 21–57(a) provides that a stop order may be issued to any person having possession or control over noise generating property that violates the specific noise levels—measure in decibels or dB—set forth in the ordinance. The ordinance operates as a restraint, but not as a prior restraint. As Defendant City points out, this construction is consistent with the Plaintiffs' pleadings which assert that the alleged enforcement action was taken after Defendants Davila and Biesenbach determined—albeit allegedly erroneously—that the sound level from the concert violated the applicable dB limits. Thus, the ordinance was not operating as a prior restraint, but as a normal municipal ordinance designed to enforce reasonable sound levels. Plaintiffs' true claims—and those which the Court allowed to survive the Defendant City's motion to dismiss—are against the individual Defendants, who Plaintiffs allege misapplied the ordinance and caused the damages they allegedly suffered.

Based upon this analysis, the Court declines to reconsider its earlier dismissal of Plaintiffs' Section 1983 claims against the City and denies Plaintiffs' motion for reconsideration on this point.

### B. Defendant City of San Antonio's Motion for Reconsideration

Defendant City of San Antonio also moves for reconsideration, seeking the Court to reconsider its denial of the City's motion to dismiss Plaintiffs' promissory estoppel claims, arguing that the Court misconstrued the holding in *Maguire Oil Co. v. City of Houston.*[12] The Court found in its prior order that Texas courts allow Plaintiffs to use the doctrine of promissory estoppel in situations involving temporary use permits. (Docket No. 46, at 15–16)

Defendant claims that this reading is erroneous and demands reconsideration.

Reviewing the Texas Court of Appeals's holding in *Maguire Oil* again, the Court reaches the same conclusion it previously reached. The court of appeals, considering the defendant City of Houston's argument that the plaintiff's promissory estoppel claim should fail as a matter of law, refused to grant summary judgment, allowing the plaintiff to affirmatively assert a promissory estoppel claim related to the revocation of its temporary drilling permit.[13] Thus, the Court again finds support for its decision not to dismiss Plaintiffs' promissory estoppel claim and will deny Defendant City's motion to reconsider this ruling.

#### CONCLUSION

Accordingly, it is hereby ORDERED that Plaintiff's Motion for Reconsideration (Docket No. 48) DENIED.

It is further ORDERED that Defendant City of San Antonio's Motion for Reconsideration (Docket No. 50) is also DENIED.

---

**12.** *Maguire Oil Co. v. City of Houston,* 69 S.W.3d 350, 369 (Tex.App.—Texarkana 2002).

**13.** 69 S.W.3d at 369.